Argued 1 April; decided 14 April, 1902; rehearing denied.

## BOWERS v. STAR LOGGING CO.

[68 Pac. 516; 26 Am. & Eng. R. Cas. 300.]

MASTER AND SERVANT—EVIDENCE OF KNOWN DEFECT.

1. In an action to recover for injuries sustained by plaintiff while attempting to set a brake on defendant's logging train, evidence that the brake had sometimes loosened up because of the dog's flying out of the ratchet while logs were being loaded on the cars, was admissible as tending to support plaintiff's contention that the dog failed to hold, permitting the brake to loosen, whereby he was knocked off his balance.

INSTRUCTIONS—DEFECTIVE APPLIANCE.

2. In an action to recover for injuries sustained by plaintiff while attempting to set a brake on defendant's logging train through the dog failing to hold, permitting the brake to loosen, so as to knock him off his balance, a requested instruction that if plaintiff, while attempting to set the brake, slipped and fell, defendant was not liable, was properly modified by adding, "unless such slipping was caused by the defective brake."

WARNING INEXPERIENCED SERVANT—SUFFICIENCY OF EVIDENCE.

3. Plaintiff, while attempting to set a brake on defendant's logging train, lost his balance, and was run over and injured. Defendant's servants did not instruct him as to how he should do the wo k, nor were any of the dangers pointed out. He was about eighteen years of age, and inexperienced. He had set the brake once or twice while the cars were being loaded. When the train was coming to a down grade, a servant of defendant ordered him to set the brake on the car. Plaintiff claimed that the dog failed to hold, permitting the brake to loosen, and knock him off his balance, causing him to fall under the train. Another servant of defendant testified that plaintiff seemed excited, and as he was backing along on the ties he tripped, and fell against the car, and the sand board caught him on the right arm, and rolled him over. *Held,* that the evidence was sufficient to take the case to the jury on the question whether plaintiff was properly warned and instructed as to the dangers of the employment.

ASSUMING RISK OF EMPLOYMENT.

4. The evidence was sufficient to sustain a finding that plaintiff had not assumed the risk incident to the employment, the jury being warranted in finding that the dangers were not obvious to a person of his age and experience.

Action by Curtis Bowers, an infant, by Daniel C. Bowers, his guardian, against the Star Logging & Lumber Company. From a judgment for plaintiff, defendant appeals.

AFFIRMED.

For appellant there was a brief over the name of *Cotton, Teal & Minor,* with an oral argument by *Mr. Wirt Minor.*

For respondent there was a brief over the names of *Thos. J. Clecton,* and *St. Rayner & Clark,* with an oral argument by *Mr. Clecton* and *Mr. A. B. Clark.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

This is an action to recover damages for a personal injury. The defendant is a corporation engaged in the logging business, and as a part of its appliances owns and operates a logging steam railroad. The cars or logging trucks are about eight feet square, and consist of a solid frame supported by four wheels. On the top and center of the frame is a beam or bolster 10 inches square, which extends out about 2 feet from the frame on either side, and upon which one end of the logs rests; the other end resting on a similar car or truck. Each pair of wheels has a brake, similar in construction to that in use on street and ordinary railroad cars, operated by a chain attached to a perpendicular rod, which extends, at the corner of the car, about 6 or 8 inches above the frame and is 5 or 6 inches below the top of the bolster. The brake is set by a horizontal crank or lever 18 inches long on the top of the brake rod, and is held in place by a ratchet and dog on the frame of the car. It is so arranged that it cannot be operated from the car, or by one riding thereon, but the operator is required to walk along the side of the moving train, reaching in with one hand to operate the brake lever, and with the other to adjust the ratchet and dog. On March 6, 1899, the plaintiff, who was about eighteen years of age, and who had been working for the defendant a week or ten days, was assigned to work on the train; and the next morning, while attempting to set the brake, fell or was thrown in front of the car, and his arm crushed so that it had to be amputated. The negligence charged is: (1) That the defendant, with knowledge that plaintiff was inexperienced, and unfamiliar with the duties of a brakeman on a logging train, or the dangers attending such work, negligently and carelessly directed him to act as one of the brakeman thereof, without giving him any notice of the danger, or cautioning him concerning the same; (2) that

the brake which the plaintiff attempted to set at the time of
the accident was defective and dangerous, in that the teeth
of the ratchet and dog thereof were worn and out of re-
pair, so that they would not hold the brake.   The plaintiff had
a verdict and judgment, and the defendant appeals, assigning
as error the admission of certain testimony, the modification
by the trial court of an instruction requested by it, and the
overruling of its motion for a nonsuit.

1. Thomas Day, the manager of the defendant corporation
at the time of the accident, was called as a witness for the
plaintiff, and, after describing the use, construction, and oper-
ation of the cars used by the defendant on its logging road,
and particularly the brakes and their attachments, testified
that, as a general thing, the brakes were set when the cars were
being loaded.   He was thereupon asked to state whether he
had ever seen the dog fly out of the ratchet, and the brake un-
wind, when logs were being loaded on the cars, and was per-
mitted, over defendant's objection and exception, to answer:
"In some two or three instances I have, in case of a big log,
sudden jar of the car; when the big log happened to be the
first log, the jar would cause the dog to go off.   I have seen
the dog go off, and the brake loosen up.   This was in cases
where the rolling of the log on the car lifted one set of wheels
off."   It is urged that this testimony was incompetent and
immaterial, because the action is not for an injury received
while the cars were being loaded, nor because the defendant
did not furnish a brake sufficient to hold them at such a time.
The complaint, however, charges that the ratchet and dog on
the car in use at the time of the accident were so worn and out
of repair that they would not hold the brake.   The plaintiff
testified that after he set the brake he put the dog in the
ratchet, but when he let loose of the brake handle the dog
failed to hold, and the brake unwound, knocking him off his
balance, and the end of the log or car struck him in the back,
and threw him in front of the moving train.   The testimony
of the witness Day, was, in our opinion, competent, as tending
to support this issue.   It was a part of the history of the case,

and material as descriptive of the use and purpose of the brake and its attachments. It tended to show, in a general way, the working of the brake and ratchet, and the use they had been put to by the defendant, and that they did not hold at all times when the car was being used in an ordinary manner. The evidence, it is true, may have been unsatisfactory, and of little value; but its weight was for the jury to determine.

2. This view disposes of the objection to the modification of the instruction requested by the defendant to the effect that, if plaintiff slipped or stumbled while attempting to set the brake, the verdict must be for the defendant, unless, as the court added, such slipping and stumbling was caused by the brake appliances being out of repair.

We come then to the motion for nonsuit, and the request of the defendant to direct a verdict in its favor. As the question raised by these two assignments of error is to be determined by the same rule (*Huber* v. *Miller*, 41 Or. 103, 68 Pac. 400), they will be considered together. Upon the question as to whether the ratchet and dog were out of repair, and insufficient for the purpose intended, there is but little testimony. Substantially the only evidence upon this point is that of the witness Day that the dog sometimes failed to hold when the cars were being loaded, and of the plaintiff that at the time of the accident he put the dog in the ratchet, but it slipped out, and allowed the brake to unwind. It may be doubted whether this is sufficient to show negligence in this regard, and, if the case depended upon this point alone, the motion might, perhaps, be well taken; but, when considered in connection with the allegation that the defendant negligently and carelessly exposed an inexperienced servant to a dangerous service without sufficiently explaining to him the ordinary dangers of the employment, and the testimony in support thereof, we are of the opinion that it was properly overruled. Mr. Day, by whom the plaintiff was employed, testified that he was first set to ''rustling rigging,'' and worked at that for a week or ten days, when he was directed by the witness to go to work on the train as the second brakeman;

that no inquiry was made of him at the time as to whether he had any experience in that character of work, but he was simply asked if he would like "a train job, and he said he would like it first rate, and that he could handle it all right; * * so I told him he could try it;" that witness did not go with him to the train, or point out any of the dangers connected with the work, nor give him any orders or directions as to how he should do his work, but that the head brakeman was supposed to attend to that matter; that the night before the accident he advised the plaintiff to take out an accident policy, because the work was dangerous, but did not tell him in what way it was dangerous.

The plaintiff testified that about two weeks before the accident he applied to Mr. Day for work, and "he asked me what I could do, and what I had done, and if I had ever worked in the woods; and I told him I had; and he asked me what I could do, and I told him my job was rustling rigging, and he told me he would give me a job,—to go to work with Pete Stewart; and I didn't know who Pete Stewart was, and I went out and went to work with a fellow that was cutting ties, and at noon they asked me why I didn't work with Pete Stewart. I told him I didn't know who he was, and I went out and worked with Neil Driscoll. And I worked with him, and they then put me to swamping. * * And I worked half a day, and came in at noon into the shanty. We had just had our dinner and we were in the shanty, and Tom Day came in and asked me if I had ever handled a jackscrew, and I told him I had, and he told me to go to work on the train. And he walked out, and didn't ask me whether I would or not. * * The only conversation I had with Mr. Day when he sent me to work on the train was that he came to me and asked me whether I had ever used a jackscrew, and I said 'Yes,' and he said, 'Well, you go and work on the train.' That's the only converation I had with him about working on the train." The witness further testified that he had never worked on a logging train, and knew nothing about the manner in which the brakes were

41 OR.—20.

constructed, or the dangers attending their use; that he did not know where to stand to set the brakes, and knew nothing about the ratchet at the time he went to work, and no one pointed out to him any of the dangers of the work; that he set the brake once or twice the day before when the logs were being loaded, but the first time he ever attempted to do so when a train was moving was at the time of the accident; that he had no recollection of either Mr. Day or the bookkeeper telling him that the work was dangerous, but did remember that they advised him to insure his life; that he worked on the train the afternoon before the accident, assisting in loading and unloading, but did not set or attempt to set the brakes when the train was moving, although he endeavored to watch Mr. Coleman when so engaged, but could not see how he did the work, and was given no instructions by any one as to how to set the brake; that the evening before the accident the train was loaded, and the next morning started to the landing, and when it came to the grade, a short distance from the camp, Coleman told the witness to get down from the engine, where he was riding, and set the brake on the car next to the engine; and further stated: "The brakes are fixed like they are on a street car, only they are straight, kind of right angle. And sometimes you have to take this dog and throw it in there. Sometimes it catches, but generally doesn't. The brake has a kind of ratchet, and I was winding this up, leaning over, walking pretty fast, as I had to, and I had wound it up about as tight as I could get it. I reached over to put the dog in to hold it there, and then the train, or the locomotive, was about going over the hill, and I saw they were going a little faster all the time, and I tried to put the dog in the ratchet to hold it, and I had it in, and when I let loose of it,—I thought it was about time for me to get out of there,—and I was leaning over the rail, and as I let loose of it, it went off of the catch, and as I started to jump the bunk or the end of the logs caught me in the back and threw me, and I fell over on the track and the pin caught me. * * I had set the catch in the ratchet, and it flew out and grazed my arm, and knocked me off my balance,

and the end of the logs on the car caught me in the back and threw me.'' Mr. Coleman, who was in charge of the logging train at the time of the accident, stated as a witness for defendant: ''When we came to the place where we set the brakes, he (plaintiff) was supposed to set the brake there, and he said, 'All right,' and he jumped off to set the brakes. I told the engineer, 'This is a new man and a green hand,' and to be careful and watch him, and he says, 'All right'; and he jumped off the engine and went to set the brake. And I took particular notice of him, as this was the first time he set the brakes, and he seemed to be kind of excited, and he was backing along on the ties, and tripped himself, and fell against the car, and when he fell against the car he doubled himself up, and as he doubled himself up the sand board caught him on the right arm and rolled him over, and just as it caught him I hollered to the engineer to stop, and I jumped off the engine and ran, and just as I got there he was lying about three feet from the track.''

3. Upon this testimony two principal questions are involved: (1) Whether there is evidence tending to show that the defendant is liable on the ground that it had not sufficiently explained to an inexperienced employe the ordinary dangers of the employmet; and (2) whether, under the facts as disclosed by the testimony, the plaintiff assumed the ordinary risks of the service when he voluntarily entered upon the duties of a brakeman on the logging train. The law upon these questions is practically elementary, and the only difficulty is in applying it to the facts. The plaintiff was not necessarily negligent in obeying the orders or directions of the foreman, Day, nor did he necessarily assume the risks of the service because he accepted the employment: *Pittsburg C. & St. L. Ry. Co.* v. *Adams,* 105 Ind. 151 (5 N. E. 187). As a general rule, one who seeks employment in any particular line of business, or voluntarily enters the service of another in a particular employment, assumes the ordinary risks incident to such employment, and he cannot charge the master with the consequences of his own want of knowledge or skill, for

the master may ordinarily assume that he is competent, and apprehends the danger of the service: 2 Bailey, Per. Inj. §§ 2710, 2721 b; Wood, Mast. & Serv. § 326; *Kuhns* v. *Wisconsin I. & N. Ry. Co.* 70 Iowa, 561 (31 N. W. 868); *Michigan Cent. R. Co.* v. *Smithson,* 45 Mich. 212 (7 N. W. 791); *Hathaway* v. *Michigan Cent. R. Co.* 51 Mich. 253 (16 N. W. 634, 47 Am. Rep. 569). But the application of this doctrine is subject to certain qualifications and limitations. It is the duty of the master not to expose an inexperienced servant, and one unfamiliar with the employment and risks attendant thereon to a dangerous service, without giving him warning of the danger, and instruction how to avoid it, unless both the danger and the means of avoiding it while he is perfoming the service required are apparent to the servant; and particularly is this true when the servant is ordered or directed to perform some service not contemplated in his original contract of employment: 2 Bailey, Pers. Inj. § 2664; Wood, Mast. & Serv. § 350; *Atlas Engine Works* v. *Randall,* 100 Ind. 293 (50 Am. Rep. 798); *Rummel* v. *Dilworth,* 131 Pa. 509 (19 Atl. 345, 346, 17 Am. St. Rep. 827). Although this case, upon its facts, is very near to the border line, we are of the opinion that under all the circumstances it was the duty of the jury to apply these settled principles of law to the facts proven, and to determine whether the plaintiff knew or apprehended the danger of the service which he was directed to perform, and whether the defendant had sufficiently warned and instructed him about the danger of the business, and how to avoid it, or had done all that was reasonably necessary to protect him from injury. If the danger to which he was exposed was such an open and obvious one as that, considering his age, intelligence, and experience, he ought, in the exercise of reasonable care, to have known and appreciated it, then he assumed the risk by entering the service, and would not be entitled to recover for an injury received on account thereof. On the other hand, if the danger was not open and obvious to a person of his age, experience, and intelligence, then he did not assume the risk, unless he had been sufficiently informed of the danger. All

these questions are so much involved in doubt that they were for the jury to decide, and could not be determined by the court as a matter of law: *Davis* v. *St. Louis, I. M. & S. Ry. Co.* 53 Ark. 117 (13 S. W. 801, 7 L. R. A. 283) ; *Hughes* v. *Chicago, M. & St. P. Ry. Co.* 79 Wis. 264 (48 N. W. 259) ; *Chopin* v. *Badger Paper Co.* 83 Wis. 192 (53 N. W. 452) ; *Wolski* v. *Knapp-Stout, etc. Co.* 90 Wis. 178 (63 N. W. 87).

4. The testimony certainly tended to show that the position of brakeman on the logging train was a very dangerous employment, and had elements of danger that were not open and obvious to inexperienced persons. It at least required some experience to do the work safely. The plaintiff was a boy, inexperienced in that kind of work, and there is evidence tending to show that he was not adequately warned of its dangers. The judgment must therefore be affirmed.

AFFIRMED.

Decided — ———, ——.