Argued December 8, 1908, decided January 12, 1909.

## ELLIFF *v.* OREGON R. & N. CO.

[99 Pac. 76.]

CORPORATIONS—NAME IMPORTING.

1. The name "Oregon Railroad & Navigation Company" may import a corporation.

MASTER AND SERVANT—RAILROADS—EMPLOYER'S LIABILITY ACT—PURPOSE.

2. The theory of Laws 1903, p. 20, making railroad companies liable for injury to employees negligently caused by a superior employee, is that, as railway service is dangerous, the imposition of such liability will necessitate exercise of greater care in the selection of superior employees.

MASTER AND SERVANT—HAZARDOUS EMPLOYMENT—EMPLOYER'S DUTY.

3. When the hazard attending work required of an inexperienced laborer is not apparent, the employer must inform him of the ordinary incidental dangers, regardless of the laborer's age, and is liable for injury resulting from his failure to do so.

EVIDENCE—PRESUMPTIONS—KNOWLEDGE OF FACT—CHEMICAL CHARACTERISTICS.

4. A common laborer was not presumed to know the chemical characteristics of zinc chloride, the strength of which depended upon the quantity of chloride placed in a vat.

MASTER AND SERVANT—RISKS ASSUMED—DISSOLUTION OF CHEMICALS.

5. A common laborer did not assume the hazard incident to dissolving zinc chloride in a vat, where he did not know the character of the solution, and the danger therefrom was not apparent.

MASTER AND SERVANT—NEGLIGENCE—FAILURE TO WARN.

6. An employer was negligent in requiring a common laborer to aid in dissolving zinc chloride, without warning him of the danger incident to such work or advising him how to avoid injury therefrom.

MASTER AND SERVANT—INJURY TO EMPLOYEE—NEGLIGENCE—FAILURE TO WARN—PROXIMATE CAUSE.

7. To authorize recovery by an employee for injury because of the employer's negligent failure to warn him of a danger, such negligence must have been the proximate cause of the injury.

NEGLIGENCE—"PROXIMATE CAUSE."

8. A "proximate cause" is a cause which leads to, or might naturally be expected to produce, the result.

MASTER AND SERVANT—INJURY TO EMPLOYEE—NEGLIGENCE—PROXIMATE CAUSE.

9. An employer is liable for negligent injury to an employee, though his negligence is united with some remote cause, and hence a third person's negligence co-operating with the employer's, does not exonerate the employer, if the injury would not have occurred *except for his negligence.*

MASTER AND SERVANT—INJURY TO EMPLOYEE—CAUSE—JURY QUESTION.

10. The cause of injury to an employee is a jury question, where there is doubt as to which of several probable causes produced the injury.

MASTER AND SERVANT—INJURY TO EMPLOYEE—CAUSE—EVIDENCE—SUF-
FICIENCY.

11. Evidence *held* to tend to show that injury to an employee caused by a
splashing of a chemical solution in a vat, resulted from the employer's negli-
gent failure to warn the employee of the danger of his occupation.

MASTER AND SERVANT—INJURY TO EMPLOYEE—PLEADING—EFFECT.

12. In an action for injury to an employee, an allegation that he was taken
from his usual work, and required to assist in the work he was doing when
injured, rebuts any inference that in seeking employment he impliedly rep-
resented that he was qualified to perform any service required of him.

MASTER AND SERVANT—ORDERS BY SUPERIOR—AUTHORITY—EVIDENCE—
SUFFICIENCY.

13. Evidence *held* to show that an employee injured while aiding in dis-
solving zinc chloride, did the work pursuant to orders of one authorized to
represent the employer.

EVIDENCE—ADMISSIONS—PLEADINGS—WITHDRAWAL OR AMENDMENT.

14. Admissions in a pleading, like a declaration against interest, are admis-
sible against its pleader, though the pleading be subsequently amended or
withdrawn.

APPEAL AND ERROR—REVIEW—VERDICT—CONCLUSIVENESS.

15. A general verdict for plaintiff, in an action for negligent injury to an
eye, is conclusive on defendant's claim that the opacity of plaintiff's eye was
caused by disease.

EVIDENCE—RES GESTÆ.

16. In an action for injury to an employee caused while he was out of his
regular line of employment, testimony that when he took up the new work
the timekeeper and the assistant engineer told him that the superintendent
had ordered him to do the new work, though in nature hearsay, was admis-
sible as part of the *res gestæ*.

WITNESSES—CROSS-EXAMINATION—DECLARATIONS TESTIFIED TO IN PART.

17. Under the express terms of Section 702, B. & C. Comp., defendant's wit-
ness having testified to part of declarations, plaintiff was entitled to a detail
of the whole.

TRIAL — RECEPTION OF TESTIMONY — STRIKING OUT — UNRESPONSIVE
ANSWERS.

18. Where part of a witness' answer is not responsive, that part may be
stricken.

TRIAL — RECEPTION OF TESTIMONY — UNRESPONSIVE ANSWERS — OBJEC-
TIONS.

19. Where a question asked a witness is unobjectionable, but the answer
goes beyond what is called for, and improper testimony is produced, an objec-
tion to the question will not reach the answer.

MASTER AND SERVANT—INJURY TO EMPLOYEE—INSTRUCTIONS.

20. In an action for injury to an employee caused by a splashing of a
chemical solution in a tank, an instruction that, if his employment around
the tank involved peculiar labor or peculiar danger of which he was ignorant
through inexperience, the employer "is" bound to "instruct him upon those
subjects and inform him what it is he needs to be watchful of," was not
objectionable when considered with the employer's duty to warn an inex-
perienced employee respecting latent dangers.

MASTER AND SERVANT—INJURY TO EMPLOYEE—INSTRUCTIONS.

21. In an action for injury to an employee, an instruction that there are
many kinds of work in which danger necessarily inheres, though reasonable

care has been taken to render it as safe as possible, that an employee assumes the ordinary risks and dangers attending such work, and that if plaintiff was engaged in that kind of work, and the accident was unavoidable, he could not recover, was properly refused for disregarding plaintiff's claim that he was not warned respecting the dangers to which he was exposed.

MASTER AND SERVANT—INJURY TO SERVANT—INSTRUCTIONS.

22. An instruction in an action for injury to an employee that the employer need not keep watch over its employees, nor warn them of common dangers to which they may be subjected in performing their ordinary duties, was properly refused for omitting the qualification that an employer must instruct respecting latent hazards of which the employee is ignorant.

DAMAGES—PERSONAL INJURY—INSTRUCTIONS.

23. An instruction that if an injured person's condition resulted from impairment of his system or because his blood was bad or impure, and if "it would not have happened had it not been for such impaired condition, he could not recover," was properly refused as implying that if the injury was inflicted when his physical condition was impaired, and would not have resulted if he had been free from ailment, he could not recover.

From Wasco: WILLIAM L. BRADSHAW, Judge.

This is an action by R. T. Elliff against the Oregon Railroad & Navigation Company, to recover damages for a personal injury. From a verdict in favor of plaintiff for the sum of $900, the defendant appeals.

Statement by MR. JUSTICE MOORE.

This is an action to recover damages for a personal injury, alleged to have been caused by the negligence of the defendant's agents in ordering the plaintiff, a common laborer in its employ, to perform services demanding the exercise of skill, without warning him of the dangerous character of acids and liquids contained in a vat into which he was required to assist another employee in lowering zinc, for the purpose of dissolving such metal and of forming a solution with which to treat railroad ties, and that while so engaged the liquid splashed into his left eye, which was slightly weak, and destroyed its sight, to his injury in the sum of $5,000.

The answer denied the material allegations of the complaint, and alleged that any hurt which the plaintiff may have suffered was due to his negligence and to the carelessness of a fellow servant, and that the dangers, if any, incident to the employment, were obvious and

known to, and concurred in, by him. For a further defense, the answer described the manner of preparing the solution, and averred that, if any of the liquid was splashed into the plaintiff's eye, the injury which resulted was due to his neglect speedily to attend to, and properly to care for, the organ of vision.

The reply put in issue the allegations of new matter in the answer, and, the cause having been tried, the plaintiff secured a verdict and judgment for the sum of $900, and the defendant appeals.      AFFIRMED.

For appellant there was a brief over the names of *Mr. William W. Cotton, Mr. Fred W. Wilson* and *Mr. Arthur C. Spencer,* with an oral argument by *Mr. Spencer.*

For respondent there was a brief over the names of *Messrs. Bennett & Sinnott,* with an oral argument by *Mr. Nicholas J. Sinnott.*

MR. JUSTICE MOORE delivered the opinion of the court.

The defendant operates machinery at Wyeth, Oregon, and uses means to preserve railroad ties from speedy decay by their coming in contact with earth and by being exposed to the weather. In order to conserve timber from hasty demolition by the elements, a chemical preparation is employed, which consists of zinc chloride dissolved in warm water. This solution is forced by pressure into the pores of the wood, giving to it a degree of indestructibleness which, without such treatment, the timber would not possess. The binary compound so employed is commercially prepared by treating scrap zinc with hydrochloric acid and by evaporating the resulting solution to crystallization, forming a caustic salt. The principal element used in the mixture in the case at bar is known in the market as "Hughes' Zinc Chloride" and was incased in metallic drums about two feet in length and 20 inches in diameter, which, when filled with the salt, weighed about 800 pounds each. To dis-

solve the chloride, the defendant uses a vat about eight feet long, six feet wide, and six feet deep, the bottom of which sets three feet below the level of a floor upon which the laborers stand when making the solution. The tank is about half filled with warm water, and, the metallic casings having been removed, there is placed around the crystallization a chain which is attached to another chain passing over a drum operated by differential blocks, one of which is secured to a beam above the vat, and with such tackle the chloride is raised above, and swung over the tank and lowered into the liquid, where it is mechanically suspended by the equipment until the salt is dissolved. From six to eight of these drums are generally used to each half tank of water, and, when the solution attains the required potency, it is pumped into a retort, where it is used in treating railroad ties in the manner indicated.

The plaintiff, as a witness in his own behalf, testified: That in July, 1904, he was employed by the defendant to keep a sufficient quantity of coal in the bunkers at Wyeth, and to maintain fires under the boilers while the other employees at that place were eating their dinners; that August 8th of that year he was directed by the assistant engineer, who had charge of the machinery used in treating ties, and also ordered by the timekeeper at the works, to leave his employment and to aid another laborer in lowering zinc chloride into the vat; that, though he had once prior thereto assisted in such work, he had no knowledge of the dangerous character of the mixture in the tank, nor was he advised or warned in relation thereto; that objecting to the change of employment, but obeying the orders given, he helped to place in the vat several cylinders of the caustic salt, the number of which he could not state, when the assistant engineer, in order to facilitate the dissolution of the chloride, shook the suspending chain and thereby caused a splash of the liquid to enter the left eye of the witness;

that extreme pain resulted, to alleviate which he immedi-
ately applied water thereto, and soon thereafter resumed
his labor, which he continued to perform until August
13, 1904, when he left the service.   He further deposed:
That, though he was 55 years old at the time he sustained
the injury, he had never used glasses, except while read-
ing; that his eye continued to distress him for about
three weeks, when the pain subsided, but the sight began
gradually to grow dim until he could, with the injured
optic, scarcely distinguish light from darkness.   He also
detailed the medical treatment which he had received
and which proved unavailing as a cure.

1. It is contended by defendant's counsel that the facts
hereinbefore set forth do not bring the case within the
provisions of our statute, which, in certain instances,
imposes upon railroad corporations liability for injury
to their employees, and that the testimony hereinbefore
set forth shows that the hurt which the plaintiff suffered
was due to the negligence of a fellow servant, for which
their client was not responsible.   The act referred to
provides, in effect, that every corporation operating a
railroad in this State shall be liable in damages for all
injury sustained by any of its employees, when the hurt
results from the wrongful act, neglect, or default of any
agent or officer of such corporation, superior to the
servant injured.   Laws Oregon, 1903, p. 20.   The defend-
ant is designated in the title of the action as the "Ore-
gon Railroad & Navigation Company," which name may
import a corporation (*Wild* v. *O. S. L. R. Co.*, 21 Or.
159, 161: 27 Pac. 954) ; but the pleadings nowhere state
that the company is engaged in operating a railroad in
this State.

2. Employers' liability acts are usually applicable to
railroad corporations, and, though the legislation is
special in character, it is based on the ground that, as
the operation of a railroad is attended with danger to
the persons engaged in the service, the imposition upon

such artificial beings of liability for injury to their servants, resulting from the negligence of a co-employee, will necessitate an exercise of greater care in the selection of such persons, thus justifying the means adopted to preserve and protect human life. *Missouri Pac. Ry. Co.* v. *Mackey*, 127 U. S. 205, 210 (8 Sup. Ct. 1161: 32 L. Ed. 107). The pleadings herein were evidently not framed to meet the requirements of the statute, and, as a construction thereof is not involved, it is unnecessary to determine whether or not the preservation of railroad ties from decay comes within the provisions of the enactment.

3. The action being based on the principles of the common law, it is argued by defendant's counsel that the hurt complained of, if any, resulted from the negligence of a fellow servant, which danger was assumed by the plaintiff when he entered the service, and that, this being so, an error was committed in denying a motion for a judgment of nonsuit. It is maintained by plaintiff's counsel, however, that though a co-employee may have contributed to the injury which Elliff suffered, the proximate cause of the hurt was the failure of the defendant to warn him of the dangerous character of the liquid which splashed into his eye, and hence no error was committed as alleged. When the hazard attending the usual exercise of any work, required of an inexperienced laborer, is not apparent, it is incumbent upon the master to inform him of the dangers ordinarily incident to the service, and if, in consequence of any failure in the performance of this duty, the servant is injured, the master is liable for damages for the neglect. 2 Bailey, Personal Inj., § 2664; 4 Thompson, Neg., § 4123; 20 Am. & Eng. Enc. Law (2 ed.), 97; 26 Cyc. 1165. In *Bowers* v. *Star Logging Co.,* 41 Or. 301, 308 (68 Pac. 516), Mr. Chief Justice BEAN states the obligation imposed upon an employer in relation to unknown perils as follows: "It is the duty of the master not to expose

an inexperienced servant and one unfamiliar with the
employment and risks attendant thereon to a dangerous
service, without giving him warning of the danger and
instruction how to avoid it, unless both the danger and
the means of avoiding it while he is performing the
service required are apparent to the servant, and particu-
larly is this true when the servant is ordered or directed
to perform some service not contemplated in his original
contract of employment." The obligation which the law
thus imposes on a master, to warn a servant of the
dangerous character of the instrumentalities about which
he is required to perform labor, is frequently invoked in
behalf of an employee of immature years, because such
a person does not ordinarily appreciate the hazard to
which he is exposed, or practice that degree of discretion
which servants of riper years usually estimate and gen-
erally exercise. This duty is not limited to an adolescent
employee, however, but extends also to an adult servant
who is inexperienced. Thus, in *Ingerman* v. *Moore*, 90
Cal. 410, 422 (27 Pac. 306: 25 Am. Rep. 138), in discuss-
ing this subject, Mr. Justice DEHAVEN says: "It is true,
this rule, which requires the employer to give proper
instructions, is most frequently applied in cases where
persons of immature years are employed about dangerous
machinery; but the same principle governs where the
person so put to work is of mature years, but without
experience in the particular work, and without knowledge
of the actual dangers attending it. But, of course, the
fact that the person injured was of mature years, as
was the plaintiff here, is a matter for the careful con-
sideration of the jury in determining whether he fully
understood and appreciated the dangers of his position."

4. The testimony shows that, at one time prior to
his injury, the plaintiff had aided other persons in dis-
solving the caustic salt, and that such material was
incased in drums, which were marked "zinc chloride";
but it does not appear that he was aware of its erosive

properties, and, in the absence of such information, it is not to be supposed that he, a common laborer, had knowledge of the chemical characteristics of the mixture, the strength of which depended upon the quantity of the chloride that was placed in the vat. *Wagner* v. *Jane Chemical Co.,* 147 Pa. 475, 479 (23 Atl. 772: 30 Am. Rep. 745). "One," says Mr. Justice LORD, in *Roth* v. *Northern Pac. L. Co.,* 18 Or. 205, 213 (22 Pac. 842, 845), "may know the facts, and yet not understand the risk."

5. The term "zinc chloride," to a person without knowledge of its chemical qualities or caustic properties, might possibly be as meaningless as sodium chloride, the phrase used to indicate common salt. To protect humanity from any injury that might result from careless exposure of baneful drugs or matter, statutes have been enacted requiring each bottle, box, or bundle containing such noxious substances to be plainly marked "poison"; and further to attract attention to the label, and possibly to aid those persons who cannot read such warning, a representation of a skull and crossbones is also used as a danger signal.

6. Though zinc chloride may not be so lethal as to require any particular admonition to be marked on the casings containing the substance, it does not appear that the caustic salt used by the defendant, at the time of the injury, was labeled in any manner, so as to notify persons, unacquainted with the substance, of the possible risks to be encountered by the use thereof. The plaintiff having no knowledge of the character of the solution, and the danger therefrom not being apparent, he did not assume the hazard incident to dissolving the zinc chloride. *Fox* v. *Peninsular Works,* 84 Mich. 676 (48 N. W. 203). The defendant therefore, in taking him, a common laborer, from his regular employment and requiring him to aid in making the mixture, without any warning of the danger or advising him how to avoid injury therefrom, was negligent. 4 Thompson, Neg.,

§ 4065; *Bowers* v. *Star Logging Co.*, 41 Or. 301 (68 Pac. 516).

7. It will be remembered that the agitation of the chain by a fellow servant, caused the solution to spatter into the plaintiff's eye, and, this being so, can it be said that the defendant's failure to warn Elliff of the dangerous character of the mixture was the efficient cause of the injury? In actions of this character it is essential to a recovery that the negligence alleged should be the proximate cause of the hurt. 20 Am. & Eng. Enc. Law (2 ed.), 78.

8. "The proximate cause," says a text-writer, "is to be defined, generally, as the cause which led to or might naturally be expected to produce the result." Buswell, Personal Inj. (2 ed.), § 97.

9. This author, at section 103 of the work mentioned, further observes:

"It is a general rule that a person injured by the fault of another, without which fault the injury could not have occurred, is not to be deprived of his remedy because the fault of a stranger, not in privity with him, also contributed to the injury. For the original negligence still remains as a culpable and direct cause of the injury, and the intervening events and agencies which may contribute to it are not to be regarded. This is the generally received doctrine, unless a contributory cause of the injury has been the negligence or fault of some person towards whom the plaintiff sustains the relation of superior or master; in which case the negligence is imputed to him, though he may not have personally participated in, or had knowledge of it. * * Upon an application of the general rule, it is held that the contributory negligence of a fellow servant will not defeat an action for an injury against the common master."

An employer, whose negligence causes an injury to his servant, is liable therefor in damages, notwithstanding his want of care is united with some remote cause. Thus, where the carelessness of a third person co-operates with the neglect of the master, in causing an injury, the

act of such person affords no immunity to the employer, if the hurt would not have occurred except for the master's remissness in the performance of the duty devolving upon him. Buswell, Personal Inj. (2 ed.), § 201; 26 Cyc. 1092; *Knahtla* v. *Oregon S. L. R. Co.,* 21 Or. 136, 149 (27 Pac. 91).

10. Whether or not the injury to the plaintiff would have happened, but for the negligence of the defendant in failing to warn him, is problematical, and in cases of doubt as to which of several probable causes produced a hurt, the case should be submitted to the jury for their determination of the question. Buswell, Personal Inj. (2 ed.), § 110; *Hartvig* v. *Northern Pac. L. Co.,* 19 Or. 522, 525 (25 Pac. 358); *Schumaker* v. *St. Paul R. Co.,* 46 Minn. 39, 43 (48 N. W. 559: 12 L. R. A. 257); *Hayes* v. *Michigan Cent. Ry. Co.,* 111 U. S. 228, 242 (4 Sup. Ct. 369: 28 L. Ed. 410).

11. We think the evidence fairly tends to establish the fact that the efficient cause of the hurt complained of was the defendant's negligence, though the carelessness of a fellow servant undoubtedly contributed in no small degree to the injury; but such co-operation was not willful.

It is insisted by defendant's counsel that, if the plaintiff was employed to shovel coal and to keep up the fires under the boilers at certain times, he, without consulting the superintendent who had charge at Wyeth, obeyed the orders of men who were not authorized to direct him, and in doing so was injured, thus showing that he was a volunteer, and precluding a recovery from the defendant of any damages that he may have sustained. The plaintiff's counsel insist, however: That Elliff aided in dissolving the chloride by order of sub-bosses who were accustomed to exercise a large measure of authority in directing the employees; that the plaintiff rendered the service in view of the superintendent, who made no objection thereto, and who tacitly, at least, approved of and

ratified his employment at the place where he was hurt;
and that as the answer affirmatively alleged that the
plaintiff, at that time, was performing his usual duties,
the defendant is now precluded from questioning the
authority of the men who directed him to assist in making
the mixture.    The assistant engineer stationed at Wyeth
at the time the plaintiff sustained the injury complained
of, was Claude Weidemeir, who, as a witness for the
defendant, testified: That he then was a sub-boss, having
men under him whom he managed, and also superiors
over him; that he .directed the plaintiff to work at the
vat; and that Elliff was called a general utility man and
did anything required of him.    D. Allerton, a chemist,
as the defendant's witness, stated upon oath that· he
was superintendent of the tie-treating plant, at the
time specified, but that he had very little to do with the
laborers, and that Weidemeir, to a certain extent, had
charge of the vat.

The case of *Mellor* v. *Merchants' Mfg. Co.*, 150 Mass.
362 (23 N. E. 100: 5 L. R. A. 792), illustrates the legal
principle for which the defendant's counsel contend—
that the plaintiff, at the time he was hurt, was a volun-
teer.    In that action an employee in a mill undertook of
his own free will to make repairs outside of his regular
duty, upon the suggestion of a fellow workman who had
no authority over him, and with the consent of his own
immediate superior, and it was held that he voluntarily
took the risk of an obvious danger and could not recover,
although he was exercising due care.    Whatever the rule
may be in such cases, we think it has no application
herein, for the testimony conclusively shows that the
plaintiff did not leave his work of shoveling coal by
his own free will, but that, objecting to the change of
employment, he aided in dissolving the chloride, pursuant
to the orders of the assistant engineer, who undoubtedly
possessed some degree of authority about the premises,
and especially so, when it is remembered that the superin-

tendent had very little to do with the laborers. A witness for the plaintiff testified that, immediately after the injury, Mr. Allerton saw Elliff, who informed him that he had received some of the chloride in his eye, and the superintendent made no objection that, in performing the service rendered, the plaintiff was a volunteer. We do not rest the decision, however, on any failure of the superintendent, after the injury, to make a statement in relation to the service which the plaintiff was required to perform pursuant to his employment, but refer to the fact as a circumstance from which the jury might reasonably have inferred that Weidemeir's power was sufficient to order Elliff to leave his usual work and to aid in making the mixture. *Jenson* v. *Will & Finck Co.,* 150 Cal. 398, 413 (89 Pac. 113).

12. The complaint alleges that the plaintiff was taken from his usual work of coal heaving and required to assist in lowering zinc into a vat. This averment is denied in the answer, which alleges that when Elliff sustained the injury complained of he was performing his usual duties. No issue is made by the pleadings that at the time the plaintiff was hurt he was a volunteer. The averment, referred to in the complaint, is adequate to rebut any inference which might arise that, in seeking employment, the plaintiff impliedly represented that he was qualified to perform any service which might be demanded of him.

13. We think the clause in the answer, which was offered in evidence, is sufficient when considered in connection with the testimony and state of the pleadings, to show that the plaintiff performed the service pursuant to the orders of a person who was authorized to represent the defendant.

14. It is maintained by defendant's counsel that the plaintiff, having adopted the affirmative matter in the answer, as hereinbefore stated, abandoned the cause of action set forth in the complaint, thereby precluding a

recovery, and that, this being so, the nonsuit should have
been granted. The admissions in a pleading, like a
declaration contrary to interest, are admissible in evi-
dence against the party alleging the fact, though the
pleading may be subsequently amended or withdrawn.
*Maxwell* v. *Bolles,* 28 Or. 1 (41 Pac. 661) ; *Feldman* v.
*McGuire,* 34 Or. 309 (55 Pac. 872) ; *Sayre* v. *Mohney,*
35 Or. 141 (56 Pac. 526). In *Mott* v. *Consumers' Ice Co.,*
73 N. Y. 543, it was held that, where a party gives in
evidence an admission in the pleading of his adversary,
he is not estopped from questioning a portion thereof
which is against him, but he is at liberty to use the admis-
sion so far as it is in his favor, and to disprove the
residue.

The original answer, which was offered in evidence,
averred that the vat into which the zinc was lowered
contained hydrochloric acid. This admission was con-
sonant with the allegation of the complaint that the tank
specified held dangerous acids and liquids. It is quite
probable that no mineral pungent of the kind specified
was used in the tank, and it is certain that the term
"hydrochloric acid" was inadvertently employed. To
eliminate such phrase, however, an amended answer was
filed by leave of court, thereby permitting the defendant
to dispel any inference that the jury may have deduced
from the original averment.

15. It is proper to state the theory of the defendant's
counsel in respect to the alleged injury. They maintain
that the opacity of the plaintiff's eye was not caused by
any of the solution getting into it, and, in support of
such hypothesis, a witness was called, who testified that,
while working about the vat at Wyeth, a splatter of the
liquid escaped and entered his eye, whereupon he immedi-
ately applied to the injured optic a preparation of soda,
and that, notwithstanding such treatment, the inflamma-
tion was so great that he was obliged to occupy a darkened
room for the remainder of the day, but the next morning

he had fully recovered from the hurt. It further appeared
that though the plaintiff claims to have been injured
August 8, 1904, he did not seek any medical aid for the
alleged hurt until February 23, 1905, that he never used
any neutralizing agent to counteract the action of the
chloride, and that he continued to perform the service
required of him until August 13, 1904. Expert oculists,
who appeared as the defendant's witnesses, severally
testified that in his opinion the plaintiff's defective sight
was not due to external injury, but that the opacity was
known as "infiltrated ceratitis," a disease caused by mal-
nutrition of the tissues, which, originating between the
layers of the cornea and extending to the surface thereof,
renders it non-transparent. This question was, under
proper instructions, submitted to the jury, whose general
verdict for the plaintiff must be accepted as conclusive
thereon.

It is argued by defendant's counsel that, when the plain-
tiff was injured, the water in the tank was hot, and that
the vapor arising therefrom afforded indisputable evi-
dence of the danger which was obvious, and, this being
so, no duty devolved upon the master to warn him of
any hazard, the existence of which he well knew. If
scalding water had been a factor which in any manner
contributed to the hurt, the legal principle invoked would
probably be controlling. Weidemeir, who, it will be
remembered, had charge of the vat and undoubtedly knew
more about the temperature of its contents than any other
person, testified, as defendant's witness on direct exam-
ination, that the water was not hot, but lukewarm.

16. It is insisted by the defendant's counsel that errors
were committed in permitting Elliff, over objection and
exception, to testify that David Allison, the timekeeper,
and Claude Weidemeir, the assistant engineer, informed
the plaintiff that the superintendent had ordered the wit-
ness to help make the solution. Though the testimony
so objected to is in the nature of hearsay evidence, the

statements were believed by the plaintiff, who, acting thereon, left his work and assisted in the manner indicated, and, as such declarations were made at the time he obeyed the command, they formed a part of the *res gestae,* and, as such, were admissible in evidence. *State* v. *Glass,* 5 Or. 73.

17. Dr. H. C. Fenton, a specialist, who had treated the plaintiff's eye after it was injured, appearing as the defendant's witness, testified on cross-examination that he told Elliff he did not see how he could possibly aid him as a witness at the trial of this cause, owing to the fact that his time was so much occupied, and he was asked:

"Didn't you tell him when he came to see you about getting you to come up (meaning to the place of trial), that he didn't need any physician; that his eye would show for itself?"

To which he replied: "Oh, yes." The plaintiff, in rebuttal, was interrogated as follows:

"I will ask you to state whether or not last August you had a conversation with Dr. Fenton, in which you asked him to come up here as a witness, and whether or not he told you that you did not need an expert as a witness; that your eye would show for itself?"

An objection to this question, on the ground that it was incompetent, irrelevant, and immaterial, that it was not proper rebuttal testimony, and that no foundation had been laid for impeachment, having been overruled and an exception allowed, the witness answered:

"Yes, he told me that it wasn't worth while to bring him up here, from the simple fact that the eye would show, and the judge and jury or any person of reasonable sense could see it. He said I wouldn't need him or any other expert."

The question last quoted was evidently intended to elicit proper rebuttal testimony, on the ground that, a part of Dr. Fenton's declarations having been received

in evidence, the plaintiff was entitled to detail the whole thereof, relating to the same subject-matter. Section 702, B. & C. Comp.

18. The question, in our opinion, was not asked for the purpose of impeachment, for if such had been the case, the attorneys who represented the plaintiff, being learned in the law and experienced in the practice thereof, would have laid a foundation for the introduction of the declaration, by calling the attention of Dr. Fenton, when he was on the stand, to the time, place, and circumstance, when the language imputed to him was uttered. Elliff's reply was fairly responsive to the question asked, and, if his answer extended beyond the limits of the inquiry, the evil effects of his testimony could have been eradicated by striking out the objectionable part (*Benjamin* v. *New York El. Ry. Co.*, 63 Hun. 629: 17 N. Y. Supp. 908); but no motion was interposed for that purpose.

19. Where a question put to a witness is in itself unobjectionable, but the answer goes beyond what is called for, and improper or incompetent testimony is produced, an objection to the question will not extend to the answer. *Holmes* v. *Roper,* 141 N. Y. 64 (36 N. E. 180); *Gould* v. *Day,* 94 U. S. 405 (24 L. Ed. 232).

20. An exception having been taken to an instruction requested by the plaintiff, it is argued by the defendant's counsel that an error was committed in giving it, to-wit:

"If you should find that the employment of plaintiff around said tank was one involving any peculiar labor, or that there was connected with the same any particular causes of danger of which the plaintiff was ignorant by reason of his inexperience, if you should find that he was inexperienced in said work, it is the duty of the master to instruct him upon those subjects and inform him what it is he need to be watchful of in the discharge of his duties; and, if the master neglects these things, he is held chargeable for the injuries that result from that neglect. Therefore, if you should find that the work around said tank was dangerous, for the reasons alleged in said complaint, and that plaintiff did not know of said

danger, as alleged in the complaint, and that said danger, if there was any, was not obvious, and that the defendant was negligent in not warning him, as alleged in plaintiff's complaint, then he is entitled to recover, even though you should find that plaintiff was injured by the act of his fellow servant, Weidemeir."

It is maintained that this part of the charge is in conflict with the averments of the complaint, in that it assumes that the plaintiff's regular employment was around the vat, and, that notwithstanding such usual occupation, it was incumbent upon the defendant to warn him of the dangers to which he was exposed. The first clause of this instruction seems to have been patterned after a part of the charge given in the case of *Roth* v. *Northern Pac. L. Co.,* 18 Or. 205, 214 (22 Pac. 842), which was held to be proper in the light of the facts there involved, and, as the danger referred to in that case is quite similar to the hazard to which the plaintiff herein was exposed, we think the language complained of is not objectionable, when it is considered in connection with the duty devolving upon a master to warn an inexperienced servant in respect to latent dangers.

21. It is contended by defendant's counsel that errors were committed in refusing to charge the jury as requested by them, as follows:

"No. 7. There are many kinds of work in which danger is necessarily inherent, notwithstanding that reasonable care has been taken to render it as little dangerous as possible, and the ordinary risks and dangers attendant upon the doing of such work are assumed by an employee who engages in such employment, and if you find that the plaintiff was engaged in a class of work of this kind, and that the accident was unavoidable, if it in fact happened, then he cannot recover, and your verdict under such circumstances should be for the defendant."

"No. 9. If the work in which the plaintiff was engaged at the time he claims he was injured was not work requiring particular knowledge and experience or skill to understand the dangers attendant upon it, if any there were, then the defendant would not be liable. It is not

required to keep a watch over its employees or to warn them of common dangers to which they may be subjected in the performance of their ordinary duties."

"No. 13.    If plaintiff's condition resulted from the fact that his system was impaired or because his blood was bad or impure, and if it would not have happened had it not been for said impaired physical condition, if it was impaired, then he cannot recover in this action, and your verdict should be for the defendant."

The request for instruction No. 7 disregards the plaintiff's claim that he was not warned in respect to the dangers to which he was exposed.    Notwithstanding the hazard may be inseparable from a performance of the service required, it is still the duty of the master to warn inexperienced servants, and particularly so as to latent dangers.    The request was properly denied.

22. The common dangers incident to the performance of ordinary duties, as referred to in the request for instruction No. 9, may even be such as to require instruction from the master in respect thereto, if the employee is ignorant of latent hazards.    As the request omits this qualification, it was properly refused.

23. The request for the 13th instruction seems to imply that, if the hurt was inflicted upon the plaintiff at the time he was suffering from an impaired physical condition, and that the injury would not have resulted if he had been free from ailment, he cannot recover.    A text-writer, discussing this subject, says:

"The fact that the plaintiff at the time the injuries were received was infirm from age, disease, or temporary disorder, is not a bar to his right of recovery, although it may be  the defendant's act would not have produced the injuries complained of if the plaintiff had been in the prime of life  or  in  normally  healthy  condition." Watson, Personal Inj., § 195.

No error was committed in denying this request.

Other exceptions are assigned, but, deeming them immaterial, the judgment is affirmed.            AFFIRMED.