Argued January 30, decided February 6, 1912.

## MOULTON *v.* ST. JOHNS LUMBER CO.

(120 Pac. 1057.)

TRIAL—RESPONSIVENESS OF QUESTIONS—REMEDY FOR UNRESPONSIVE ANSWERS.

1. If a question does not reasonably indicate that the evidence desired is objectionable and the answer is deemed improper, the remedy is to move to strike it, so that in an employe's action for personal injuries by falling through a roof on which plaintiff was walking, in

which plaintiff answered the question, "After you took the second step, explain what you did," by stating that a moment after the fall he inquired of the superintendent, "What kind of a trap this was to set for a man?" defendant should move to strike the answer as not responsive, instead of objecting that it was not a part of the *res gestae.*

EVIDENCE—RES GESTAE.

2. Plaintiff was injured by falling through the roof of a shed over which he was walking, and in a second or two after he fell, and as soon as he could speak, he asked his foreman, "What kind of a trap this was to set for a man?" *Held* that the remark was admissible as *res gestae.*

MASTER AND SERVANT—FELLOW SERVANTS.

3. Plaintiff was injured by falling through the roof of a shed while walking over it under the order of another employe to get material from another building. The other employe had charge of 25 or 30 men, including plaintiff, whom he employed and discharged, and about a week before the accident had supervised the removal of a building, against which one side of the shed had rested, thereby weakening the roof of the shed and making it unsafe. *Held,* that the other employe was not plaintiff's fellow servant in directing him to walk across the shed roof.

MASTER AND SERVANT—SAFE PLACE OF WORK.

4. An employer is required to furnish servants with a reasonably safe place of work.

MASTER AND SERVANT—MASTER'S DUTY—INSPECTION OF PLACE OF WORK.

5. A master is required to inspect the place of work from time to time and keep it in a reasonably safe condition; any defects therein being unknown to the employes.

MASTER AND SERVANT—MASTER'S LIABILITY—NEGLIGENCE OF VICE PRINCIPAL.

6. An employer is responsible for the negligence of an employe to whom he delegated the duty of investigating the condition of the place of work and keeping it reasonably safe.

MASTER AND SERVANT—NEGLIGENCE—DEFECTIVE BUILDINGS.

7. Plaintiff was injured while walking over the roof of a shed to reach another building to procure lumber pursuant to his foreman's order by falling through the roof owing to its weakened condition, resulting from the recent removal by the foreman of another building to which the roof of the shed had been fastened, and of which dangerous condition the foreman ought to have known. Plaintiff had been but recently employed and reasonably supposed the roof to be safe. *Held,* that the foreman's failure to warn plaintiff of the danger in going over the roof was actionable negligence.

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.

8. An employe is not negligent in selecting one of two obviously safe ways of passage to reach material, though the one selected proved dangerous.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by George E. Moulton against the St. Johns Lumber Co. to recover damages for a personal injury. Defendant, a corporation, operates at St. Johns, Oregon, a large sawmill, and near it owns a building, in the loft of which was stored lumber that could be removed through an opening in the north gable. Beneath this aperture and resting against the building mentioned was a board-covered shed, the plates of which rested upon posts about nine feet long at the south side and six feet at the north. This shed had been filled to the roof with flooring and stepping, which material was removed two or three days before plaintiff was hurt, but prior to such withdrawal the lumber kept the roof from wavering. Near the north end of the shed there had stood for some time a truck load of lumber, the upper parts of which rested on the slanting roof, while the lower ends reached a line level with the bottom of the shed, forming an incline that afforded a means of reaching the top of the shed, thence across its roof through the opening in the gable and into the loft. Plaintiff, a carpenter, had been employed by the defendant prior to his injury but a few days, during which time he had secured from the loft lumber when he needed it, going and returning over the shed roof, before the flooring and stepping had been removed, and along the inclined lumber. He had occasion on September 27, 1909, to use more of the lumber that was kept in the loft, and notifying the defendant's superintendent who had charge of the construction work at the mill that such material was required, and informing him where it was kept was told by such agent to get it and in attempting to do so by the route described the shed fell, breaking plaintiff's leg and necessitating its ampu-

tation below the knee. The complaint minutely described the premises, alleged, as negligence, the faulty erection of the shed, the defendant's failure to attach it to the building against which it rested, and the careless removal of the support of the roof thereby rendering it unsafe and dangerous, that the shed was so constructed that it appeared to a reasonably prudent man and to the plaintiff to be safe, but defendant knew or ought by the exercise of reasonable diligence to have known it was insecure and hazardous. It is further averred that the manner of obtaining the lumber as indicated was the only way of reaching the loft as well known to the defendant's superintendent, who ordered plaintiff to get the material by going over the route indicated without notifying him of the danger, and that in obeying such direction the shed fell injuring him in the manner described.

The answer denied the material averments of the complaint, and alleged that the injury sustained by plaintiff was the result of his own negligence; that he knew the condition of the shed and assumed the danger incident thereto; that, if he was hurt in consequence of any negligence, it was the carelessness of fellow workmen; and that his injury was the result of accident which could not have been foreseen or prevented, setting forth in detail the alleged facts constituting the several defenses.

The reply put in issue the allegations of new matter in the answer, and the cause, having been tried, resulted in a judgment in favor of plaintiff in the sum of $2,000, and the defendant appeals.      .      AFFIRMED.

For appellant there was a brief over the names of *Messrs. Rauch & Senn,* with an oral agrument by *Mr. F. S. Senn.*

Sig.   3

For respondent there was a brief over the names of *Messrs. Graham, Davis & Cleeton,* and *Mr. Arthur I. Moulton* with an oral argument by *Mr. Moulton.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. The plaintiff as a witness having detailed the incidents preceding his injury, described the manner of obtaining lumber from the loft, and narrated the order given by the defendant's superintendent to secure such material, in obeying which instruction he started up the shed roof, when it commenced to fall, was directed by his counsel as follows: "After you took the second step, explain what you did." Answering this command, the witness gave an account of the fall of the shed, and stated that, as soon as possible, he inquired of defendant's superintendent, who was present when the structrue collapsed: "What kind of a trap this was to set for a man?" To this remark defendant's counsel objected on the ground that the observation having been made after the injury was inflicted was no part of the *res gestae.* Moulton in reply to an inquiry by the court, "How long was it after the accident that you spoke to Mr. Huard, the defendant's superintendent?" said "Within a few seconds. * * Well just as soon as I could speak." Thereupon the objection was overruled and an exception allowed. The witness was further directed by his counsel as follows: "Just state what you said to Mr. Huard, and what he said to you at the time he approached you." Moulton replied in part as follows: "I asked him what kind of a trap this was to set for a man?" The defendant's counsel objected to such remark on the ground that any observation the witness may have made regarding his injury after it occurred would have no bearing as to how the accident happened. The objection was overruled, however, and an exception allowed.

It is maintained that the expression uttered by plaintiff after he was hurt was no part of the *res gestae,* and that being true errors were committed in overruling the objections interposed. It will be remembered that the plaintiff was directed to state what he did after taking the second step on the roof of the shed as it was falling, and that, having narrated his actions at that time, he repeated the remark which he made to defendant's superintendent. The command, "State what you did," was proper, and no objection was made or could legally have been sustained to the direction. The plaintiff having complied therewith volunteered the declaration which at the time he was hurt he made to the defendant's superintendent. Instead of moving to strike out the observation on the ground that it was not responsive, an objection was made to the statement. This was not the proper course to pursue. The rule is that where a question asked of a witness does not indicate that the testimony reasonably to be expected is objectionable, and the answer does not correspond with the inquiry, but contains what is deemed to be improper testimony, the remedy is to move to strike it out. *Cromeenes* v. *San Pedro, L. A. & S. L. R. Co.,* 37 Utah 475 (109 Pac. 10). The second command, addressed to plaintiff, "Just state what you said to Mr. Huard and what he said to you at the time he approached you," was not proper, according to the theory of defendant's counsel, and objection should then have been made which was not done. After the witness had thus, without objection, reiterated the remark which he had made to the defendant's superintendent, complaint was made of the language used. If it be assumed that Moulton hastily complied with the direction of his counsel before defendant's attorney had an opportunity to object to the command, which is not apparent from an inspection of the bill of exceptions, a motion to strike out the

observation should have been made. It is doubtful, therefore, if the legal principle invoked in the two alleged errors thus assigned is presented for consideration. The inquiry will be treated, however, as it was by the court and the counsel at the trial, as to whether or not the remark complained of was a part of the *res gestae.*

In *People* v. *Davis,* 56 N. Y. 95, 102, Mr. Justice GROVER, in discussing this subject, announces the following legal principle: "The question is, Did the proposed declaration accompany the act or was it so connected therewith as to constitute a part of it? If so, it is a part of the *res gestae,* and competent; otherwise not."

2. In the case at bar the observation was made, as testified to by plaintiff, in a second or two after he fell, and as soon as he could speak. At the time there apparently was no opportunity to formulate a theory respecting the cause of the injury sustained. The remark objected to was the natural and spontaneous expression of resentment of the plaintiff, who had sustained a compound fracture of one of his limbs. His impulsive declaration immediately accompanied the hurt, and was so intimately connected with the injury as to be an element of it, and for that reason his detailing of the inquiry which he propounded to Huard at that time was admissible in evidence as a part of the *res gestae.* Section 707, L. O. L. *Little Rock, M. R. & T. Ry. Co.* v. *Leverett's Adm'r,* 48 Ark. 333 (3 S. W. 50: 3 Am. St. Rep. 230); *McLeod, Receiver* v. *Ginther's Adm'r,* 80 Ky. 399; *Walters* v. *Spokane International Ry. Co.,* 58 Wash. 293 (108 Pac. 593); *Swanson* v. *Pacific Shipping Co.,* 60 Wash. 87 (110 Pac. 795). No errors were committed in the particulars so assigned.

Though denied by some of the witnesses, testimony was offered from which the jury might have found that for several months before the accident defendant's

servants had frequently passed over the inclined load of lumber, forming a passageway thence along the roof of the shed, putting lumber into and taking it out of the loft, so that notice of the manner of reaching such upper room in the way indicated might reasonably be imputed to the defendant.

The plaintiff testified that prior to September 27, 1909, he had worked at the sawmill about a week, and in that time he had made two or three trips to the loft where the lumber was stored, going over the roof of the shed, beneath which flooring and stepping were then piled, and passing along the truck load of lumber forming an inclined way; that just prior to the injury he notified Mr. Huard that he desired some lumber to complete a piece of work on which he was engaged for the defendant, informing the superintendent that the material was stored in the loft, whereupon the latter directed him to get the necessary lumber from the place indicated; that, when he attempted to obey the command, Huard stood near and in full view of the shed; and that, when falling, the witness observed the superintendent looking towards him. The jury might therefore have reasonably inferred that the defendant's superintendent saw plaintiff as he ascended the inclined way.

3. It is insisted by defendant's counsel that if this testimony can be construed as a command to go upon the roof of the shed, in obeying which plaintiff was injured, the order was the direction of a fellow workman for whose conduct no responsibility attaches to the master, and, such being the case, an error was committed in refusing to direct a verdict for the defendant. To understand the relation Huard sustained to the workmen at the mill and the duties required of him, the testimony tends to show that in performing construction work for the defendant he had the custody

of 25 or 30 men, including the plaintiff, whom he employed and discharged; that about a week prior to the accident he supervised the removal of a building against which rested one side of the shed, a crosspiece of which was nailed to such building; that the disconnecting from that structure rendered the shed insecure, and removing the flooring and stepping, which supported the shed roof, made it unsafe and dangerous.

4, 5. The law imposes upon the master the duty to furnish the servant a reasonably safe place in which to perform his work and also makes it incumbent upon the former from time to time to inspect such place and keep it in a reasonably safe condition where any defect therein is unknown to the servant.  26 Cyc. 1136.

6. For any negligence on the part of an employe to whom the master has delegated the service of making such investigation and keeping up such restoration in consequence of which carelessness another servant sustains an injury, the master is responsible for the resulting damages.  12 Am. & Eng. Ency. Law (2 ed.) 958.

7. The chief defect in the shed was undoubtedly occasioned by the removal of the building to which it had been fastened, thereby impairing its stability. Huard having caused such building to be taken away without bracing or otherwise making the shed safe, his employer knew or ought to have known that it was dangerous.  In passing over the roof to get the lumber which he was told to secure the plaintiff, who was a recent employe, and for that reason but little acquainted with the shed, and reasonably supposing that it was safe, should have been notified of the hazard he might possibly encounter, and the failure thus to warn him of the danger was a breach of duty on the part of Huard who was not in this respect a fellow workman with him at the time.  *Allen* v. *Standard Box & Lumber Co.*, 53 Or.10 (96 Pac. 1109: 97 Pac. 555: 98 Pac. 509); *Elliff* v.

*Oregon R. & N. Co.,* 53 Or. 66 (99 Pac. 76). No error was committed in refusing to instruct the jury to find for the defendant as requested.

It is argued that plaintiff might have obtained the lumber from the loft by ladder in the use of which no danger would have been encountered, and, as the choice of two ways was open to him, he, as an experienced carpenter, should have known the conditions, and, having selected the most dangerous way, he thereby assumed the risk, and was guilty of contributory negligence in consequence of which he was injured, and for that reason an error was committed in refusing to direct the jury to find for the defendant. The testimony tends to show that near the place of the accident no ladder was kept, but that one might have been obtained from the mill yard or from some other building.

8. The plaintiff testified that, before he was hurt, he believed the shed was fastened to the building in the loft of which the lumber was stored, and that he did not know another building had ever stood beside the shed to which it had been nailed. He had therefore no reason to apprehend any danger in passing, as other employes had frequently done, over the roof which was apparently as safe as a ladder; and as between two obviously safe ways, if he selected one which ultimately proved to be dangerous in consequence of which he sustained an injury, he cannot be charged with negligence. 20 Am. & Eng. Ency. Law (2 ed.) 146; 26 Cyc. 1249; *Rush* v. *Oregon Power Co.,* 51 Or. 519 (95 Pac. 193).

No error was committed in refusing to instruct the jury as requested. Believing that the defendant had a fair trial at which no prejudicial errors were committed, it follows that the judgment should be affirmed, and it is so ordered.                              AFFIRMED.