GEO. RUMMEL, JR., v. DILWORTH, PORTER & CO.
GEO. RUMMEL v. DILWORTH, PORTER & CO.

APPEALS BY DEFENDANTS FROM THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued October 26, 1887.
Re-argued October 28, 1889—Decided March 3, 1890.
[To be reported.]

| | |
|---|---|
| 131 | 509 |
| 134 | 215 |
| 131 | 509 |
| 139 | 49 |
| 139 | 261 |
| 140 | 454 |
| 131 | 509 |
| 151 | 519 |
| 153 | 384 |
| 131 | 509 |
| 155 | 375 |
| 131 | 509 |
| 157 | 57 |
| 157 | 323 |
| 131 | 509 |
| 168 | 260 |
| 131 | 509 |
| 190 | 119 |
| 131 | 509 |
| e204 | ¹621 |
| e204 | ²621 |
| 131 | 509 |
| 211 | ²138 |
| 211 | ¹283 |
| 131 | 509 |
| 33 SC | ¹478 |

1. While an employee, as a general rule, must be held to have assumed, when he entered upon an employment, the risks which are incident to it, yet he has a right to expect that its dangers will be pointed out to him, and that he will be instructed in those things he should know in order to provide for his own safety.
2. In the case of young persons employed, it is the duty of their employers to take notice of their age and ability, and to use ordinary care to protect them from risks which they cannot properly appreciate, and to which in the course of their employment they should not be exposed.
(a) A youth about seventeen years of age, and but lately engaged in an

iron mill, was employed in one duty, but was injured while permitted to perform a different duty properly to be discharged by another employee, and dangerous because of the absence of sufficient protective appliances:

3. In such case, it was necessarily a question of fact for the jury whether his employer had sufficiently warned and instructed him as to the dangers of the employment and how to avoid them, or had done all that was reasonably necessary to protect him: Rummel v. Dilworth, 111 Pa. 343.

4. Moreover, the scope of the duty within which the employee was entitled to protection, was to be defined by what he was employed to perform, and what with the knowledge and approval of his employer he did perform, rather than by the verbal designation of his position in the mill.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.

Nos. 90, 91 October Term 1887, Sup. Ct.; court below, Nos. 269, 270 December Term 1882, C. P. No. 1.

On October 23, 1882, writs of summons were served in two actions in case, one by George Rummel, Jr., by his next friend, George Rummel, against Dilworth, Porter & Co., Limited, and the other by George Rummel against the same defendant. The plaintiff in the case last named was the father of the plaintiff in the first named case. Issues.

The two cases were tried together on January 25, 1884, before COLLIER, J., and at the close of the plaintiffs' testimony, on motion of the defendant, judgments of nonsuit were entered, which on error to this court were reversed: Rummel v. Dilworth, 111 Pa. 343.

George Rummel, Jr., died on August 24, 1884, and his father, George Rummel, as his administrator, was substituted as plaintiff in the first named action.

At the second trial of the cases together on December 15, 1886, the facts made to appear were in substance as follows:

On September 6, 1881, George Rummel, Jr., then about seventeen years of age, went to work as a " drag-down " in the mill of the defendant company. His duty was to drag heated billets of iron from the furnace to a train of ten pairs of continuous rolls, by means of which they were converted into material for spikes. Two drag-downs served each pair of rolls and they were required to move with rapidity.

The rolls were in pairs, and between each pair was a distance of about two feet. In this space was what was called a " gate," which consisted of two bars of metal, perpendicular or nearly so, fastened to the floor by hinges. These bars were kept upright in their places by a chain tightly drawn from the top of one to the top of the other, and they held between them small rollers upon which the heated billet would move in its passage from one pair of rolls to the other. Sometimes the billet, too hot or soft, would bend downwards as it was passing from one pair of rolls, and would then stick by failing to reach the rollers on the gate. When this would occur, an adjustment was made by loosing the chain from the top of the gate bars, so that the billet would be caught and carried on its way, or removed.

The pairs of rolls were kept in motion by a system of cog-wheels at the ends of the rolls. These wheels were guarded by a board railing at the sides of the train, except at the place between the first and second pairs of rolls. To reach the gate between these pairs, and make its adjustment when necessary, the person in charge called the " roller," or his assistant, was obliged to step quickly to the point, to loosen the chain at the top of the gate bars, and when the billet was caught, to reach over the cog-wheels and with both hands catch the bars, draw them together, and replace the chain. This adjustment had to be done carefully and quickly also, to be ready for the heated billet following.

On September 10, 1881, when young Rummel had been working in the mill for four days, a heated billet stuck at the gate between the first and second pairs of rolls. Rummel opened the gates by using an appliance kept for the purpose, and in adjusting it again for the next billet he was caught in the cog-wheels of the second pair of rolls, his leg drawn into them and so crushed that amputation was necessary.*

The defendants introduced testimony from which it was claimed that the operation of the trains of rolls was turned over by the defendant firm to a pair of men known as " roller bosses," and these roller bosses operated the rolls with a force employed by themselves; that, in fact, the defendants had

---

* The facts connected with the injury are more fully set out in the Opinion of the Court, in Rummel v. Dilworth, 111 Pa. 343.

Charge of Court below.

nothing to do with such employees as young Rummel, and had
no control over them; that Rummel's sole duty in his employ-
ment as a drag-down was to assist in taking the billet from the
furnace to the rolls, when it became the duty of the "roller"
and his assistants to superintend its passage through the train;
that Rummel had at various times before been employed as a
drag-down, doing spare work; and that not only had he been
cautioned not to go in to the gate, but was familiar with the
danger at the time he was injured.

Other matters of defence shown appear in the charge to the
jury, COLLIER, J.:

It is alleged by the learned counsel for the plaintiff, and
evidence has been offered tending to show the theory that
George Rummel was employed at the defendants' mill as a
drag-down, or, that he took the place for a few days of his
brother, who was regularly employed there; however, that is
not very material. He alleges that in addition to his duty, his
primary duty as a drag-down, which you have had explained
to you very fully, he was permitted, with the knowledge of
the roller-boss or bosses, to go in where these cogs were, and
unshift them in order to let the billets pass through the rolls;
that in doing this he was caught by the cogs and injured, and
this because a board, which would have been a protection to
him, was not along these cogs. That is the main allegation of
negligence.

The first matter for you to determine is the question of neg-
ligence. It is alleged that along a part of this train of rolls
there was a board from one and a half to two feet high, which
was a protection, or at least a partial protection, against strik-
ing or being caught in the cogs when they leaned over to this
apparatus which they threw open to let the billet go through
the rolls. It is alleged that the want of that board there, was
the cause of the injury to George Rummel. It is also alleged
that while Rummel's primary duty as a drag-down was only to
put the billets in the rolls, yet the boss or bosses permitted
him and others, and he was accustomed to open these gates
with their knowledge and consent. That is for you to deter-
mine. Apply the evidence to that: How was it?

Rummel had been working there four or five days. It is al-

Charge of Court below.

leged that on this morning, when he was injured, Mr. Richards, the boss, and some of the assistants were there, or about there at the time; and it is alleged that Rummel, with the knowledge of Mr. Richards, went around to open the gates; that Richards knew and approved of it, by his acts allowed him to do it; that other drag-downs had been allowed to do the same thing when the bosses were not present. It is alleged that Richards allowed him to do this; that the boy knew what others had been allowed to do, and that he permitted it by his presence and thereby approved of it. That is for you to determine. If Mr. Richards, whose duty it was to see to this matter, knew the boy was doing this and permitted it, it was, as a matter of course, with his approval. Now, the defendants deny that. They allege that this lad was cautioned not to go in there; that drag-downs had been allowed to open the gates only when the others were not about, and that Rummel must have seen Mr. Richards on the ground at the time. You will have to determine how that was. If these be the facts, it was a voluntary act on the part of the boy, and he would have no right under such circumstances to hold the owners of the mill liable for his own negligence. That is the first question in the case.

You will talk that matter over among yourself in discussing the evidence. You saw the witnesses upon the stand and are the judges of their credibility. However, I may say to you that it was clearly not this boy's primary duty to go there at all. His primary duty was to put the billets in the rolls. But it is contended that with the consent and approbation of the roller boss he went there and got caught in the cogs by reason of the board not being there. Now, if you find that was the case, and he went around to open the gates and that by reason of the board not being there the injury was caused, then the plaintiff in each case would be entitled to recover.

That brings the whole question down to a very narrow compass. The plaintiff cannot recover unless he shows you that this boy was hurt by reason of the absence of that board there; that that was the cause of the injury, and it not being his primary duty to do this, that the boss permitted him to do it, or, with his knowledge and consent, saw it, and made no objection. The law requires that employers shall provide for their ser-

vants or people who work for them, or under their bosses, not absolutely safe, but reasonably safe and secure machinery and appliances. This board was not machinery, but it was part of the appliances. That is the law and it is not disputed by the counsel. You will direct your attention to the evidence as to negligence. Did this boy do this, with the knowledge and approval of his employer or boss? And, in putting up this machinery, was the omission to extend this board along and past these cogs, an omission of duty to supply reasonably safe machinery? All this must be found by you to enable the plaintiff to recover, and if the weight of the evidence does not satisfy you of it, that is the end of the case.

Now, gentlemen, the defence is the exact opposite of this. I will call your attention to the allegations on the part of the defence.

The defendants allege that this boy Rummel had been working there for a few days, taking the place of his brother; that he was a drag-down; that he had notice, not from the boss, it is true, but that he had notice that he was not to go in to these gates, to open them; that he would get hurt if he did. It is alleged, also, that Mr. Richards was present at the time, and that there is no evidence that he saw the boy or knew he was going to open the gates at all; that he was there on the ground to perform his duty, but that the boy slipped around to the gates and the accident occurred. It is further alleged that it must have been known to the boy that the board was not there, and knowing that, and having had notice that he ought not to go there, that would prevent a recovery. If he saw there was no protection there, that the board did not cover these cogs and he chose to risk it, particularly after notice, if he had notice, he was a volunteer, and the plaintiff could not recover against the owners of the mill. This is all denied on the part of the plaintiff. He says that the two witnesses who testified to the notice were contradicted. You will determine that. But if that was a fact; if Mr. Richards or his assistants were there to perform this duty, and this boy went around and opened the gates, without his knowledge, the plaintiff cannot recover. Or, if the boy saw that the board was not there and saw that it protected the other cogs, then there can be no recovery. But on the part of the plaintiff that is utterly denied. . . . .

The court is requested by the plaintiff to charge:

1. That defendant company was in duty bound to provide reasonably safe appliances and machinery around about which deceased was employed to work at the time he was injured, as described by witnesses; and if defendants voluntarily subjected deceased to dangers which they ought to have provided against, and the injury sustained by deceased on September 10, 1881, was the result of a want of proper provision against such danger, the defendants may be held liable in this action.

Answer: Affirmed; exception.[4]

5. That the scope of duty within which a servant is entitled to protection is to be defined by what he was employed to do and what, with the knowledge and approval of his employer, he did perform, rather than by the verbal designation of his position; and if the jury find from the evidence that George Rummel, the deceased, was, at the time he was injured, performing service with the knowledge of the roller-boss, Richards, and his approval, and was injured while performing that service, without contributory negligence on his part, they may, under all the evidence, find for the plaintiff such damages as will make the plaintiff whole, in the exercise of their judgment and discretion.

Answer: Affirmed, subject to the instructions in the general charge; exception.[5]

The court is respectfully requested to charge the jury on the part of the defendants:

1. That there is no sufficient evidence of negligence on the part of the defendants which contributed to the injury of George Rummel, deceased, and that, therefore, their verdict must be for defendants.

Answer: Refused; exception.[1]

1½. That there is no evidence in the case that the machinery on which George Rummel was injured was not of an ordinary character and such as could with reasonable care be used without danger, except such as was reasonably incident to such use; and that there is no evidence of any complaint on the part of any one to the defendants of any defect in said machinery, or omission of any reasonable precaution for safety in connection therewith, nor of any knowledge on defendants' part of any defect or omission, and that therefore the verdicts of the jury must be for the defendants.

Answer: Refused; exception.[2]

3. If the jury find from the evidence that George Rummel was injured while in the performance of an act which it was no part of his duty to perform, there can be no recovery in these actions, and the verdict of the jury must be for defendants.

Answer: Affirmed, with the qualification that the scope of duty within which a servant is entitled to protection is to be defined by what he was employed to perform, and what, with the knowledge and approval of his employer, he did perform, rather than by the verbal designation of his position; exception.[6]

The jury returned a verdict in favor of the plaintiff in No. 269, for $165; in favor of the plaintiff in No. 270 for $1,815.50. Rules for a new trial having been discharged, the defendants took these appeals assigning for error:

1, 2. The answers to the defendants' points.[1][2]

4, 5. The answers to the plaintiff's points.[4][5]

6. The answer to the defendants' point.[6]

The causes were argued together on October 26, 1887. On January 7, 1889, a re-argument was ordered which was had on October 28, 1889, before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

*Mr. John Dalzell* (with him *Mr. Wm. R. Blair*), for the appellant:

1. The very first element necessary to sustain the recovery in this case is wanting. There was no contract relation, express or implied, between Rummel and the defendants, and therefore he could not recover against them on the ground of service. "A servant, strictly speaking, is a person who, by contract or operation of law, is for a limited period subject to the control of another person in a particular trade, business or occupation:" Wood on M. & S., § 1. "It is the right of control, which determines the question whether the relation of master or servant exists:" Wood on M. & S., § 1.

2. But suppose, for the sake of the argument, that he was the employee of defendants, still, the evidence disclosed no ground of recovery against them. He was employed as a drag-

down, and his duty lay between the furnace and the table in front of the rolls. The testimony was explicit that a drag-down had no business to be doing what Rummel was doing when he was injured. He was then a mere volunteer. The defendants were liable for the consequences of such injuries as they sub-jected their employee to, and not for those to which he subjected himself: Pittsb. etc. R. Co. v. Sentmeyer, 92 Pa. 281.

3. But assume, further, that Rummel's duties related to the opening and closing of the gates, can anything be more plain than that he was injured by one of the ordinary risks of his employment, and by one which he not only had a fair and full opportunity to discover, but actually knew and saw from the moment of his employment, and before that time? That an employee cannot recover from his employer, under such circumstances, is not at the present day open to dispute : Frazier v. Railroad Co., 38 Pa. 104; Pittsb. etc. R. Co. v. Sentmeyer, 92 Pa. 278; Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185; Green St. etc. Ry. Co. v. Bresmer, 97 Pa. 103; Wharton on Neg., § 243.

4. The court below was of course controlled by what was said by this court upon the former hearing of the case: Rummel v. Dilworth, 111 Pa. 343. In that portion of the opinion, CLARK, J., beginning on p. 350, at "It is certainly true that the cog-wheels were open and fully exposed to view," and end-ing, "The plaintiff cannot be supposed or assumed to have ac-cepted in advance a peril which he could not estimate, and the extent of which for lack of experience he could not have known," the application of the well-settled principle discussed is denied because the extent of the danger could not be calcu-lated in advance. But with great respect, we ask : Is this the law? See Frazier v. Railroad Co., 38 Pa. 111.

5. But again: there was no evidence, sufficient to be sub-mitted to the jury, of any negligence on the part of the defend-ant firm as to the machinery in the use of which young Rummel was injured. An employer is not bound to furnish the safest machinery, nor to provide the best methods. If the machinery be of an ordinary character, and such as can, with reasonable care, be used without danger to the employee, it is all that is required: Payne v. Reese, 100 Pa. 306; Pittsb. etc. R. Co. v. Sentmeyer, 92 Pa. 276. To recover, it is necessary to show

personal negligence on the part of the master: Caldwell v. Brown, 53 Pa. 459. The happening of the accident was not evidence of negligence: Jennings v. Railroad Co., 93 Pa. 337. The submission to the jury to find negligence was clear error: Adams Exp. Co. v. Sharpless, 77 Pa. 516.

*Mr. A. M. Watson*, for the appellee:

1. One defence urged is that the deceased boy was not an employee of Dilworth, Porter & Co., but was employed by Richards, who, in his testimony, corroborated the plaintiff's testimony, that this mill and all others are run on the same plan, giving the bosses work by the ton and piece, so calculated that the laborers and helpers get their wages, and the bosses get the balance for their wages. In fact, the pay comes from the mill office, and the boss hands each man and boy his money in an envelope, having first delivered his pay-roll at the office, where he gets the money every pay-day.

2. The guard was put up when the train was built, and why it was not extended to the end of the train is a wonder, for that was a place where billets frequently stick, and the employee was " voluntarily subjected to a danger which, in good conscience, the employer ought to have provided against:" Pittsb. etc. R. Co. v. Sentmeyer, 92 Pa. 280. And the fact that soon after the boy was injured, the owners of the mill had the board extended about three feet, making work at that end of the train as safe as it had been before, when eight of the ten pairs of rollers were protected, threw the burden on the defendants: McKee v. Bidwell, 74 Pa. 218.

3. The case of Mansfield Coal & Coke Co. v. McEnery, is cited as parallel, but we fail to see it that way. There the trembling, swaying bridge gave warning every time the coal train passed over it. McEnery saw it daily, and must have been warned. But in this case, the boy was put to work at three or four o'clock in the morning, in the dimly lighted mill. He had worked four days, and during that time had relieved the billet two or three times, as he had seen others do, in the presence of Richards. He was willing to work and learn, and for want of a board three feet long he was exposed to a danger he did not expect. How many others made narrow escapes from that danger was not shown.

NO. 90.

OPINION, MR. JUSTICE WILLIAMS:

This case was first brought into this court several years ago by the plaintiff, against whom a compulsory nonsuit had been entered in the court below. The judgment of nonsuit was reversed, and the case sent back for trial: Rummel v. Dilworth, 111 Pa. 343. On the next trial a verdict was rendered in favor of the plaintiff. The pending writ of error was sued out by the defendants, who complain, not that the court below failed to follow the rule laid down by this court, but that the rule should be reconsidered and modified. We were so much impressed by the importance of the subject, and so desirous to correct any error into which we might have fallen, that a re-argument was ordered by this court of its own motion. That re-argument has taken place, and we have had the benefit of a clear and able discussion of the questions on which we are asked to modify the opinion expressed when the case was here before.

These questions are two in number: 1. Was not the danger of injury from the cog-wheels in which the plaintiff's leg was crushed, a danger incident to his employment, the risk from which he assumed when he entered upon his work? 2. If the first question is not answered affirmatively, then was not the injury received in the performance of an act which it was not his duty to perform, and the risk from which was for that reason self-imposed? We will consider these questions in their order.

The general rule that a workman assumes the risks incident to his employment when he enters upon it is well settled, but its application is subject to certain qualifications. He certainly has the right to expect his employer to provide machinery, tools, and appliances that are reasonably safe for his use, and he assumes no risks growing out of their defective character, unless he has been fully advised that they are defective and dangerous. He has the right to suppose that his employer has provided such guards and means of protection from injury, in the use of the machinery, tools, and appliances, as are usual and reasonably necessary for his safety; and he cannot be held to assume the risks attendant on their absence, unless such absence is apparent, or his attention has been called to it. If

the business is one with which he is not familiar, he has a right to expect that its dangers will be pointed out to him, and that he will be instructed in those things necessary for him to know in order to his own safety. He cannot be held to assume the risk of dangers of the existence of which he has no knowledge. In the case of young persons, it is the duty of the employer to take notice of their age and ability, and to use ordinary care to protect them from risks which they cannot properly appreciate, and to which they should not be exposed. The duty in such cases to warn and instruct grows naturally out of the ignorance or inexperience of the employee, and it does not extend to those who are of mature years, and who are familiar with the employment and its risks.

In the present case, Rummel was a lad of about seventeen years, with very little acquaintance with the business or its dangers. He went into the employ of the defendants on Tuesday. He left on Friday of the same week, with a leg so crushed that immediate amputation was necessary. He was employed as a "drag-down," but was hurt while performing the duties of a "roller," in opening and closing the gate between the first and second pairs of rollers. The cog-wheels by which the rollers were moved were covered along the whole length of the train, except at the point over which Rummel had to reach to open and close the gate. If they had been covered at that point the accident could not have happened. In view of the youth and want of experience in the business on the part of Rummel, it was necessarily a question for the jury whether his employer had sufficiently warned and instructed him about the dangers of the employment, and how to avoid them, or had done all that was reasonably necessary to protect him from injury. This is what is meant by the passage from the opinion of this court found in Rummel v. Dilworth, 111 Pa. 343, to which exception is taken. It was not meant to assert that the dangerous character of a piece of machinery, a bridge, or an effort to cross a railroad track in front of a moving train, should be determined by the result of an experiment in each case, but that a workman must know the dangers of his employment by actual experience in the employment, or by the instructions of his employer, before he can be held to have assumed them. In other words, it is not just to the employee to hold him to have assumed dan-

Opinions of the Court.

gers of which he has no knowledge by experience in the business, or by the warning and instruction of his employer. Such risks cannot be estimated, because they are not known to exist, or, because their real character and extent can only be known by familiarity with the business, or information from one who has such familiarity. The court could not declare, therefore, as matter of law, on the facts of this case, that the danger from which Rummel suffered was one the risk of which he assumed when he accepted employment as a drag-down.

Our second question grows out of the answers complained of in the fifth and sixth assignments of error. As we have already had occasion to remark, Rummel was employed as a drag-down. He was hurt while in the discharge of the duties of a roller, and the court was asked to say that, in attempting that for which he was not employed, he voluntarily assumed the risk incident to his unnecessary undertaking. If the facts presented a case such as is thus assumed, it may be that the rule invoked should have been given to the jury; but the learned judge of the court below well said that " the scope of duty within which a servant is entitled to protection is to be defined by what he was employed to perform, and what, with the knowledge and approval of his employer, he did perform, rather than by the verbal designation of his position." If, in the absence of the roller, he was permitted and expected to open the gate in case the billet stuck fast, he was entitled to instruction and protection in the same manner as though he had been employed as a roller. Whether he was permitted and expected to manage the gates in the absence of the roller was a question of fact. If the jury found that he was, then the defendants were not entitled to the instruction asked for in their third point, and the answer complained of was right.

On examination of the whole case, we are of opinion that the judgment must be affirmed.

## NO. 91.

OPINION, MR. JUSTICE WILLIAMS:

The judgment in this case is affirmed.

Judgment affirmed.