(49 South. 704.)

No. 17,312.

ROSSEY v. LAWRENCE & HAMILTON
et al.

(April 26, 1909.  Rehearing Denied June 19,
1909.)

1. MASTER AND SERVANT (§ 153*)—DANGERS
OF EMPLOYMENT—WARNING OF MINOR.

It is the duty of the master to give to his servant, a minor of immature years, such instructions and warning of the dangers incidental to the employment as may reasonably enable him to understand its perils and to avoid them.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 314–317; Dec. Dig. § 153.*]

2. MASTER AND SERVANT (§ 286*)—INJURY TO MINOR—NEGLIGENCE OF MASTER—QUESTION FOR JURY.

Where a minor servant not quite 13 years old, who had not been instructed and warned of the danger incidental to his employment, and who was ignorant of them, in attempting to enter a narrow and dangerous passageway slipped on a wet floor and fell, and in falling one of his hands was caught and crushed by an exposed cogwheel located on one side of the passageway, held, that the question of the negligence of the master was one for the jury under all the facts and circumstances of the case.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1044, 1046; Dec. Dig. § 286.*]

3. MASTER AND SERVANT (§ 129*)—INJURY TO EMPLOYÉ—PROXIMATE CAUSE.

In such a case the negligent exposure of the gearing was the efficient cause of the injury, and the slip and fall a mere condition.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 257–263; Dec. Dig. § 129.*]

4. DAMAGES (§ 132*)—PERSONAL INJURIES—INADEQUACY OF VERDICT.

Where a boy not quite 13 years old lost the thumb and forefinger and portions of the next two fingers as the result of an accident, an award of $1.000 as damages is manifestly inadequate.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 178, 372–385, 396; Dec. Dig. § 132.*]

Monroe, J., dissenting.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

Action by Eva Rossey, tutrix, and individ-ually, against Lawrence & Hamilton and others. Judgment for plaintiff, and defendants appeal. Amended and affirmed.

Morgan & Milner and Ivy Green Kittridge, for appellants. Milton James Cunningham and Pierre De Vezin Olivier, for appellee.

LAND, J. Mrs. Eva Rossey, wife of Joseph Rossey, has a son, Anthony B. Camps, by a former marriage. This boy, then not quite 13 years of age, while working in the feedmill of defendants, slipped, and while falling threw out his arms, and his left hand was caught by an exposed cogwheel and was so crushed that amputation of the thumb and forefinger and portions of the second and third fingers became necessary. Mrs. Rossey, the mother, sued for $20,000 damages, $10,000 for Anthony, $5,000 for herself, and $5,000 as punitive and exemplary damages.

In substance, the original petition alleged: That Anthony was hired for the sole purpose of carrying water from the yard to the laborers on the three floors of the mill building; that on April 25, 1907, at 7 p. m. the manager of the mill sent the boy up to the top of the elevator on the third floor to watch the corn as it passed into a sieve, and to keep the sieve from being clogged, although that work was not among the duties for the performance of which he was hired; that, while so employed, the boy, wanting a drink of water, descended to the floor, which at the time was in a slippery condition on account of molasses and other ingredients of the manufactured feed being spilled on the floor, and in consequence the boy slipped, and to save himself from falling naturally threw out his hand to catch some support, which would safely have been found on the drying machine, if it had been in proper condition, but his left hand struck the cogwheel on the end of said machine, which was exposed, although it should have been covered, and his hand was mashed and

mangled as already stated; that it was necessary for the boy to pass near the said cogwheel in going for water; and that the injury resulted from no fault of his, but was due entirely to the gross fault, negligence, and indifference of the defendants in leaving said cogwheel exposed. The petition alleges that the boy was not familiar with the premises, was entirely ignorant of the machinery, was not warned of any danger, and knew nothing of the location or exposure of the cogwheel, and was not guilty of any fault, indiscretion, or carelessness.

Defendants filed an exception of no cause of action, which was overruled. Thereupon plaintiff, with leave of the court, filed an amended petition, amplifying the allegations of the original petition, and setting forth other grounds of negligence, such as insufficient lights, unsafe passageway and place to work, and failure of the defendants to furnish reasonably safe implements and machinery. Defendants excepted to the filing of the amended petition as changing the issues. This exception was overruled. The case was tried by jury, which found a verdict for $1,000 in favor of the minor Anthony B. Camps, and $250 in favor of Mrs. Rossey. Both parties moved for a new trial, which was refused. Defendants have appealed, and plaintiff has joined in the appeal and prayed for an amendment increasing the amount of damages.

We think that the exception of no cause of action was properly overruled. We cannot agree with counsel for defendants that the only charge of negligence contained in the petition is that they left the cogwheel exposed and unguarded. It was negligence to send the inexperienced boy, without instruction or warning, to the third floor, among machinery of which he was ignorant, and where he had to pass and repass over a slippery floor very near a revolving cogwheel, of which he knew nothing. ·

The amended petition was properly allowed, as it merely amplified the allegations of the original petition and set forth additional grounds of negligence.

Anthony, with the consent of his stepfather, was employed as a water boy. He was not quite 13 years old. He worked at night carrying drinking water from the yard to the laborers on the different floors of the mill. It appears that the boy was also directed by the superintendent to look after the sieve of a large corn bin on the third floor. On the third night the boy, wishing to get a drink of water, descended to the floor, and, while passing within a few feet of the cogwheel, slipped, and in falling his left hand was caught by the cogs and badly mashed. It appears that very near the corn bin was a conveyor for the mixing of the materials, including molasses, which entered into the composition of the stock feed, and some 21 inches beyond was a large drier, on the end of which the cogwheel was fastened. The boy intended to pass between the conveyor and the drier, but slipped when three or four feet from the entrance of the passage. The evidence tends to show that the floor near the cogwheel was slippery when cleared of the mixed feed which at times escaped from the conveyors, and several witnesses say that the floor at the time of the accident was covered with water from rain coming through an open window.

The boy testified that he saw the cogwheel several times before the accident, but he did not know what it was. He passed and repassed within a short distance of the revolving wheel in going to and from his work.

The superintendent testified that Rossey, the boy's stepfather, who was a night watchman at the mill, asked him to hire Anthony as a water boy, and that he finally consented, at the same time telling the boy that all he had to do was to carry water and to go upstairs to the corn bin whenever corn was going

up, and shake the bin to prevent its choking with cobs and shucks. While Rossey denies that the boy was hired to shake the bin, the boy does not contradict the superintendent's testimony, and as a matter of fact the boy was sent to the bin on the second and third nights, and Rossey, as night watchman, must have known that his stepson was doing this kind of work. The boy was under the orders of Edmund Belton, the night miller, who was a son of the superintendent. The facts, according to Belton's testimony, are as follows: The first night the boy was directed to carry water to the men as they called for it. The second night Mr. Belton conducted the boy to the third floor and through the passage between the reel and the drier to the corn bin. The boy's duty there was to clean the sieve; that is, to remove cobs, shucks, and other things too large to pass through. Mr. Belton gave the boy no directions as to the proper passageway to follow in going to and returning from the corn bin. Mr. Belton and other employés used at times the narrow passage between the conveyor and the drier. This was the nearest way to the head of the stairs, but was narrow and dangerous on account of its close proximity to the cogwheel. Mr. Belton further testified that the customary passageway was between the drier and the reel, and that this was the safe way to travel in going to and returning from the corn bin. Mr. Belton did not instruct the boy to use this safe passageway and did not warn him of the danger of using the other or of going near the cogwheel.

It appears to us that, if the boy had been properly warned of the danger of the situation, he would in all probability have been more careful in going near the cogwheel. He was facing it when he slipped and fell.

The boy was injured while in the performance of the duty assigned to him. He was ignorant of machinery and of the dangers attending the operation of the same. While the work assigned to the boy was not per se dangerous, its performance involved the necessity of frequently passing the exposed cogwheel. In the language of the superintendent:

"Cogwheels are always dangerous when a man gets too close to them."

The same witness testified that the space between the conveyor and the drier was too narrow for a passageway, and that it was dangerous for anybody to attempt to pass through it. The boy was not warned of this danger and shown how to avoid it. He was facing the unsafe way of exit, when he slipped, fell, and was injured.

The general principles of law applicable to a case like this have been stated as follows:

"Where the master knows, or ought to know, the dangers of the employment, and knows, or ought to know, that the servant, by reason of his immature years or inexperience, is ignorant of or unable to appreciate such danger, it is his duty to give him such instruction and warning of the dangerous character of the employment as may reasonably enable him to understand its perils." 26 Cyc. 1173. See, also, Wharton Law of Negligence (2d Ed.) § 216.

"A master who places a young and inexperienced servant at work near unprotected cogwheels or gearing may be negligent in failing to warn him of the dangers of the position and to instruct him how to avoid them." Noden v. Verlenden Bros., 211 Pa. 135, 60 Atl. 505; 3 Am. & Eng. Ann. Cas. 367; note 3 Am. & Eng. Ann. Cas. p. 372, citing Small v. Brainerd Lumber Co., 95 Minn. 95, 103 N. W. 726; Rummel v. Dilworth, Porter & Co., 131 Pa. 509, 19 Atl. 345, 346, 17 Am. St. Rep. 827.

As a general rule, it is held that the failure of the employer to provide coverings for cogwheels is not negligence per se. 34 Cent. Dig. Master & Servant, § 229. But, as held in Carroll v. Williston, 44 Minn. 287, 46 N. W. 352, the question depends on the circumstance of each case, the nature of the service, the degree of exposure, and notice thereof to the servant. Dangerous machines, which can be easily covered at small cost, should be incased by the master for the better protection of his servant. Foreman v. Eagle Rice Mill Co., 117 La. 227, 41 South.

123 LA.—34

555. In most cases the experienced servant knows and appreciates the dangerous character of an exposed machine, and is held to have assumed the risk; but this doctrine has no application to minors ignorant of machinery and the dangers attendant on the operation of the same.

In our opinion the defendants were negligent in not warning the boy of the danger of the situation and instructing him how to avoid it. He should have been told not to use the dangerous passageway and not to go near the gearing.

In this connection we may note Act No. 301, p. 454, of 1908, forbidding the employment of children under the age of 14 years.

Whether the defendants were negligent in not covering the cogwheel was a question for the jury under all the facts and circumstances of the case. There is nothing in the record to show that it could not have been covered at a small expense. The slippery condition of the floor increased the danger created by the exposure of the gearing and concurred in producing the injury.

On the question of the proximate cause, we refer to the following authorities: Wharton's Law of Negligence (2d Ed.) § 86; Railway Co. v. Kellogg, 94 U. S. 475, 24 L. Ed. 256; Scheffer v. Railway Co., 105 U. S. 252, 26 L. Ed. 1070.

The damages awarded the minor for pain and suffering and the maiming of his left hand are manifestly inadequate in amount. While the hand was not destroyed, the total loss of the thumb and forefinger and the partial loss of two other fingers render it almost useless for practical purposes. There is no standard for the measurement of such damages, and the citation of awards in other cases as to quantum is merely confusing, as the amount is primarily fixed by the jury, and this court does not interfere except in clear cases of excess or inadequacy. In this particular case, we, in the exercise of our ap-

pellate jurisdiction on the facts, find that an award of $2,500 in favor of the minor would be reasonable. As to the mother, who has a husband to support her, there is no evidence that would justify an increase of the amount.

It is therefore ordered that the judgment appealed from be amended by increasing the amount awarded to the minor, Anthony B. Camps, represented by Mrs. Eva Rossey, as tutrix, from $1,000 to $2,500, with legal interest on $1,500 thereof from the date of the rendition of this decree, and it is further ordered that as thus amended said judgment be and the same is hereby affirmed; costs of appeal to be paid by the defendants and appellants.

MONROE, J. I dissent.

PROVOSTY, J., concurs in the decree.