On the Merits.
The decedent was at work at the place assigned to him by the miller or foreman at *199 the time that he came in fatal contact with the revolving machine of defendant’s mill.
That part of the mill consists of a machine known as a “reel.”
Each large mill operates five or six of these reels. They are indispensable in a rice mill. They, among other things, clean the rice, separate the straw from the rice.
The shaft revolves at about the rate of 76 revolutions a minute, and on this shaft there is a cogwheel, small in diameter, and a large wheel, the former moving the latter at a speed of about one-third less than the shaft.
Near the small cogwheel on the shaft there are two set screws protruding about an inch above the circular surface of the revolving shaft.
These set screws are necessary, and no one objects to them as not properly set and not in their places on the shaft.
These beveled wheels, driven by the shaft before mentioned, are driven outwardly from the shaft, and that, of course, means that they are not turned inwardly.
These machines are all practically geared the same way.
The machinery was in good order. It was bought from Norllyke & Marmion, well-known manufacturers of rice mill machinery.
As before stated, the son of plaintiff was put to work by the foreman or miller on Saturday afternoon, and continued to work until the following Thursday at about 3 o’clock.
The young man — the decedent — had on an overall at the time. At the end of one of the sleeves of this overall there was a short copper wire about five inches in length. It was a part of the suit, put on by the manufacturer of these overalls to serve in place of a button when the button is missing.
There was a clearance of 26 inches between the machine where the young man had to stand in oiling it and where he had occasionally to sweep the floor at this particular place near the shaft and large revolving rollers lying lengthwise perpendicularly to the machine.
The theory is, on the part of the witnesses and others, that he was in the act of oiling the machine from the opposite side of the little pinion drawing the gear. Leaning over, a piece of his overall, possibly the copper wire, which it seems had a loop at the end about large enough to fall on and be caught by one of the set screws, caught his arm, and in revolving hurled him to his death.
No one saw him just.at that time.
A moment afterward one of the young men came to where he was, and found him dead.
He was fastened to the shaft. His clothing had been torn in shreds.
There are only two grounds upon which recovery of damages can with any degree of reason be urged:
The first, that he was not properly warned before or at the time he began to work at defendant’s mill.
The other is that the machine should have been screened because such machines are dangerous, and the danger would be greatly minimized by screening them.
[3] Scant warning was given, if any at all.
Taking up the first proposition for discussion, we will have to state that plaintiff’s son received scant warning. His work was on the third floor, where there are, it seems, many dangerous machines.
A young man who preceded him in working on this floor at similar work undertook to instruct him as to what he should do to do his work properly, but said nothing about the danger by which he was surrounded.
This young man was heard as a witness. His testimony as relates to danger was entirely negative, and not at all satisfactory toward proving that he did or said anything that might prove useful to the recently employed workman. Not a word was *201 said about the danger, and nothing uttered that might have impressed him with the necessity of being careful.
The miller, who also testified that he warned and instructed the young man as to danger, went a little further into the matter of danger; not much further, however.
In a general perfunctory way he testified that he said something to the young man about the machine, or made some reference, in passing, as we take it, to the set screws.
Altogether we are not impressed by the testimony regarding the asserted warning.
It was not the thorough matter of fact warning to which a new hand placed in a dangerous position is entitled and should receive. He should have been warned about the danger of the machine. I-Ie should have been instructed where to stand; how to bend over in oiling the machine; whether to oil from the left or the right side. It would certainly not be out of place if the experienced foreman were to go through the work himself for the purpose of impressing the workman with the necessity of exercising some' prudence.
The son of plaintiff was a young laborer in the field of his father, 18 years of age. He knew nothing of machinery.
The farm boy, accustomed to broad fields around him, sees well enough in the distance, but he is not a close observer of things immediately around him in the factory before he acquires some experience.
When he changes his work from field to factory he should be warned and instructed. Otherwise, there is danger ahead which it may be he will not always know how to avoid.
[4] Regarding the screening of the machine.
The ^weight of the evidence creates a decided impression that these machines should be screened, to the extent necessary at least to minimize the danger.
The cost is little. One dollar, it was said by the witnesses.
The weight of the testimony is that these machines may to some extent be screened without interfering with their operations.
One, perhaps two, of the witnesses for defendant thought that it would increase the danger instead of minimizing it. Others, a number of them who had had many years experience in rice mills, were quite positive that the danger might be minimized without the least interference with the working of the machine.
The defendant on this point, through learned counsel, urged that a complete machine was ordered, that it was put in place as directed, and that it had every reason to infer that nothing further was to be done.
That is very true; yet, as time passes, and as experience teaches, safety appliances may be constructed in order that the workman may have a reasonably safe place in which to work.
We will for a few moments refer to the law upon the subject of warning that should be given, and to the necessity of not leaving part of a machine exposed that can easily be encased.
As to warning, both in our and a number of other jurisdictions, the courts have decided that there should be reasonable warning and instruction given to the new, inexperienced hand called upon to do work in a dangerous place.
Without quoting from each of these decisions, we cite them for convenience of reference as following an unbroken trend upon the subject. There is not a dissenting view upon the necessity of warning, which now engages our attention. Parrenin v. Orescent City Stockyards, 120 La. 75, 44 South. 990; Rossey v. Lawrence & Hamilton, 123 La. 1055, 49 South. 704; Carter v. Dubach Lumber Co., 113 La. 239, 36 South. 952; Burns v. Ruddock Cypress Co., 114 La. 247, 38 South. 157; Moses v. Grant Lumber Co., 114 *203 La. 933, 38 South. 684; Brinkman v. St. Landry Cotton Oil Co., 118 La. 835, 43 South. 458; Bourg v. Brownell-Drews Co., 120 La. 1009, 45 South. 972, 124 Am. St. Rep. 448; McBailey v. Suberbielle, 120 La. 570, 45 South. 442.
In another jurisdiction, the court said pertinently, among other things upon the subject :
“Did they neglect to give notice of the location of the set screws, and to instruct him in the manner of running the machine so as to guara him against the injury which he received?”
The answer to the inquiry was not favorable to the factory, and thereupon the court found the defendant liable. Ingerman v. Moore, 90 Cal. 410, 27 Pac. 306, 25 Am. St. Rep. 138, 44 L. R. A. 37 (note).
There are also a number of decisions regarding the necessity of screening dangerous machinery.
[5] They sustain the proposition that the place should be suitable, and the machines and appliances made reasonably safe. Foreman v. Eagle Rice Mill, 117 La. 227, 41 South. 555.
Rossey v. Lawrence & Hamilton, 123 La. 1055, 49 South. 706, in which the court said: “Dangerous machines which can easily be covered at small cost should be encased.”
As to the amount of damages.
Defendant’s son suffered, if at all, only a moment.
Because of the disagreement in the family, his usefulness, however dutiful he may have been as a son, we infer, had been greatly impaired; his companionship very much less than it would in all probability have been otherwise. He had left his father, and as natural in these instances he seemed to cling to his mother and her influence.
We will not detail the different items, but will pass upon them as a whole.
In view of the unfortunate relation of the father toward his family, the amount is fixed at $1,500.
It is therefore ordered, adjudged, and decreed that the judgment appealed from is amended by reducing the amount allowed to $1,500 with 5 per cent, interest thereon from the date the case was decided in the district court. As amended, the judgment is affirmed, at costs of appellee on appeal.