NO. 8531

COURT OF APPEAL

PARISH OF ORLEANS.

———

ELLIS A. FITLER

versus

DENNIS SHEEN TRANSFER INO.

8521

———

Hon. J. Porter Parker, Judge.

———

8521

Dinkelspiel; J.

Plaintiff fil.., this suit against the defend at in a twofold capacity, in his behalf and for the use and benefit of his minor daughter, Warreen, and represents th t he in his own behalf for injury to his automobile is entitled to the sum of $345.00 an in behalf of his minor daughter for injuries sustained by her, in the sum of $5000.00, for this to wit:

That on the 23rd of October, 1920 his wife driving down in her car on St. Charles Avenue when at the intersection of St. Charles Avenue and Thalia Street, a mule team drawing a wagon or flo.t belonging to the defendant and driven by a negro driver ran into and collided with the automobile in which plaintiff's wife and daughter were seated; alleging further that said collision occurred and said injuries and damages were caused by no fault or negligence on the part of the child or of the driver of the automobile or of any person or persons save that of the driver of the wagon and his employers; and was solely and entirely caused by the gross negligence, carelessness and want of skill on the part of said defendant's driver; alleging further that the child Warreen between the age of two and three years, seated on the back seat on the left hand side of the car was injured by the pole of the wagon or float. It is further alleged that Mrs. Fitler was driving her car very slowly and was proceeding to cross Thalia Street but before she could clear said street the driver of the wagon or float started again and the accident resulted; the injuries inflicted on the child Warreen are comminuted fracture of the second phalanx of the left thumb and the third phalanx of the left fore-finger and contu-

sion of the left elbow and several lacerated wounds of the scalp. Alleging further that under the City Ordinances petitioner's wife had the right of way.

The prayer was for the sum of $5349.00, $349.00 being for injuries to the automobile and the rest for injuries to his daughter Warreen.

The answer is a general denial and a plea of contributory negligence.

This case was tried before a jury and there was a verdict and judgment in favor of plaintiff in his own behalf for the sum of $349.00 and for the use of his minor child Warreen, in the sum of $3750.00, with legal interest from date of judgment and for costs and from this judgment defendant has appealed.

Plaintiff in answer to appeal prays that judgment in favor of Warreen Fitler be increased to the sum of Five Thousand Dollars.

Plaintiff's witnesses were Mrs. Hall, the grandmother of the child who testifies substantially that the car was going down St. Charles Avenue on the 33rd of October and just as they got to the corner of St. Charles Avenue and Thalia Streets traffic was somewhat crowded, and defendant's wagon was believed to have stopped on the track and as the driver of the wagon started to ~ cross thexxxxuk my daughter blew her horn, he did not notice it, the wagon was coming and just as it got there the next thing the tongue in the wagon pushed the child between the brac of the car; her screams and my screams caused by daughter to look back to see what happened, she stopped the car; in the meantime the man pulled the tongue of the wagon out of the car and ran off so that I never saw what color he was and several gentlemen pulled the braces off of the child,

one of them was Mr. Aitke...; she goes on to testify to what occurred at the time, how the child was rushed to the Hospital, how she was taken from the braces and she described that the child was sitting with her and was holding the braces when the wagon tongue came in the car and which caught her hand and her a. between the braces, the braces were the post which held up the top of the car, the child suffered considerably, her little finger was crushed, the little finger on the left hand, together with the thumb on the same hand, were almost completely off and were hanging back on the hand; she further says that her daughter was a competent driver, had been driving the car for about a year, always careful.

On cross examination she in no manner altered or changed her testimony in chief.

William Aitken, a witness on behalf of plaintiff, who was present at the time of the accident referred to, goes on to testify, "I was coming down St. Charles Avenue and there were just two cars ahead of me and I saw a Dennis Sheen float crossing St. Charles Avenue and Thalia Street, it was up to the street car track, there is an incline there and the float went up and stopped on the incline and an electric car was approaching, there was an auto coming out Thalia Street to St. Charles and if he had not turned down his auto would have run into the float.

Q. Was there an accident there?

A. Yes sir, the tongue of the float ran into the brace supporting the top of the automobile and there was a child in the back of the auto who had her hand around one of the braces, her hand was crushed against the brace and it looked very b and I got out of my auto-

mobile and took her to the Presbyterian Hospital; he goes on to testify that there was a lady driving the auto and also that there was another lady in the back seat, two children, one on each side; the driver of the wagon was a colored man; had his license in my memory but I have forgotten and when xkxdxkxx the driver got down Thalia Street, he lashed his mules and turned into Prytania Street going uptown, he was going fast.

Q. Did you see any name on the float?

A. Yes sir, Dennis Sheen, it was a read float with white letters.

Testifying further in reference to the float, he says he had notified the defendants, who were friends of his but they admitted nothing, he described the condition of the child and when asked what occurred when he first s-w the wagon, he answers, "I saw the position of the wagon and it looked as though there would be an accident, he was in the way, blocking the traffic and it looked like he was trying to get in the way of everyone and he slackened up feeling that he would driver through.

Q. What part of the Sheen wagon collided with the Fitler car?

A. The tongue of the float.

On cross examination, giving an account of the float, the driver and the way the accident happened, describing the float, the name of defendant on same, that he was convinced it was the property of defendant, drivent by a colored driver; amongst other parts of his testimony in reference to the handling of the float and his conversations with the defendant in reference thereto, testifies that the defendant said that no license number was given and that they did not have the name of the driver.

Being asked. Q. Did they deny it was their wagon when you told them it was?

A. I do not think they did.

Dr. Cole who was the physician who attended this child testified that the child had a lacerated wound of the scalp, compound comminuted fracture of the second phalanx of the left thumb and two fingers of the left hand, and when asked what a comminuted fracture was, answers that the skin is broken and the bones protrude outside of the skin, he treated the child for several months, she was suffering quite a good deal, the wounded fingers looked bad, was obliged to use anesthetics on several occassions, thinks that neither of the fingers will be able to perform their natural functions; the child would never be able to use the left hand as she formerly did, his bill for services rendered was $350.00, paid to him.

L. F. Martin Jr. another witness for plaintiff saw the accident at the corner of St. Charles Avenue and Thalia Street, heard a crash, then about forty feet from the corner, saw a wagon, thinks it was a single two horse wagon, and there was a car on his right about the center of the street, there was an automobile in front of him about thirty feet ahead of him and when he heard the crash, looking up saw an automobile and wagon jammed together, that is the front of the wagon had cut somewhere into the automobile and by that time the car he was driving got to the corner, the car struck by the wagon kept on going and the wagon kept going and I kept going myself, and then heard a scream and ran alongside of this car and jumped on the running board, the car going very slow, I pulled the car out of neutral, brought the car to a stop, looked in the rear and there was a little child with her arm caught in

the brace of the auto and I jammed it back and took the child's arm out.

Q. Who do you mean never stopped?

A. The driver of the wagon did not stop, he kept on going, and I walked to the corner and asked some one to go and see who it was and he was not exactly out of sight, could not see the wagon at the next corner.

He describes the condition of the child, the injury to her fingers which were cut and fractured; the skin was torn off some of them.

On cross examination this witness says when he saw the float and the rate of speed at which it was going, believed that an accident would happen, otherwise he did not alter his testimony in chief.

The next witness was Mrs. E. A. Fitler, wife of plaintiff, mother of the injured child. She goes on to say she had been driving her automobile for about a year all over the City, throughout the principal thoroughfares and had never met with an accident prior to this one and describing the accident says that she was driving a car about nine o'clock in the morning, in company with her mother and two of her children, seated on the front seat at the wheel on the left hand side, her mother and the children were seated in the rear; she goes on to testify what happened on the morning in question and she says: We were going down St. Charles Avenue at a very slow rate of speed, and when we got to the corner of Thalia Street the traffic was rather congested and I slowed down. This wagon was coming across St. Charles Avenue, across Thalia Street and as I approached the corner of Thalia I slowed and this wagon stopped on the car track as he was going across, and as I was approaching down the avenue he came down in the end of the car mashing the two bows together

where my little daughter had her hand, and as soon as he struck her he pulled loose and whipped his mules and started to run out Thalia. Street; the baby screamed for help, I stopped my car and when I stopped it I jumped out to go to my baby's assistance, it took three men to pull this bow loose from her hand, and in the meantime these men came up to assist us and carried her to the Presbyterian Hospital; she was bleeding very much, we were all covered with blood, and the gentleman that carried her to the hospital took his handkerchief and wrapped her hand to keep it from being exposed until we got there.

She testified that the moment she heard screams of her baby she put on the breaks and jumped out, when she first saw the vehicle it was approaching the St. Charles Avenue car tracks, she could not describe whether it was a wagon or a float and she went on to testify: "As I crossed the wagon was on the car track and stopped and as I proceeded down St. Charles Avenue he had stopped on the car track, and when I got nearly across Thalia Street he came down on the back of the car.

Q. Could you have avoided that accident in any way?

A. No sir, I could not as the traffic was very bad and there were cars in front of me, and a car came out Thalia Street right in front of me.

She also testifies that she was going very slow, did not think more than about five miles and hour; the wagon struck the car, the driver whipped up his mules and ran out Thalia Street to Prytania Street very fast.

On cross examination, whilst in portions of her testimony there evidently were some parts thereof, particularly in reference to what speed she was going and possibly in some other minor particulars, this witness

212

may not have been possibly as accur-te ba she was in her main testimony, nevertheless under the circumstances, the difference in our opinion is not material and not worthy of quoting; she maintained her original statements in reference to where her car was and where the driver of the wagon had placed his team and insisted as she did in her original testimony that the driver was entirely at fault and that there was no other wagon or float save and except the one in question.

Plaintiff himself, Mr. Fitler, did not see the accident but knew that his wife was a competent driver and testified to the accident which occurred to his child, the bills he paid, the one to Dr. Danna, ten dollars, to the Presbyterian Hospital, $9.50, to Dr. Cole, $350.00, and further testified as to the accident and the cost of repair to his automobile, which he paid.

All the bills paid by plaintiff were offered in evidence, together with the Ordinance of the City of New Orleans, Nos. 5338 and 5381, known as the Traffic Ordinance, and especially paragraph 1 of Article 1 and paragraph 8 of Article 1 and paragraph 8 of Art. 3.

Defendant's testimony, commences with that of Lafayette Sheen, and the point of his testimony was to show that at the time of this accident, the defendant was only operating one float which had two mules; they had other vehicles operated by four mules and spring wagons and the two mule wagon was driven by only one man who had been in their employ for many years, he describes the wagon in question, together with how they were loaded.

Q. State whether your floats have ever came to your yard in the evening with someone else's sideboards on them?

A. Yes sir.

He also testifies that frequently the sideboards on their float have been lost, he identifies the letters in this record, written to him by counsel for plaintiff, Mr. Titche, together with his answers, and to question propounded by a juror admits that his wagons are painted red with Dennis Sheen Transfer Company on them in White and that was the standard color.

Joseph Polite, testified that he was the driver for the Dennis Sheen Transfer Company and that he had been such for twenty years; driving a two mule float and that the defendant had only one of these floats and denies that he had an accident on October 23rd, 1920 or that he ran into an automobile at St. Charles and Thalia Street, never had an accident, he had never crossed Thalia Street and St. Charles Avenue when he drives out to the Texas & Pacific; he goes out Canal Street to Camp, then to Thalia and then to the Texas & Pacific.

It would be futile and useless to discuss this testimony. It is evident to our minds, that the jury who saw and heard him did not believe his testimony, nor do we. It is so full of contradictions and so utterly unreliable that it is not to be belived under any circumstances.

Lawrence Jenkins, another witness for the defendant, the driver of one of their four mule floats, only testifies to having lost sides of the float, knows nothing at all about accident in question and did not participate therein.

Joseph Simpson another witness for the defendant testifies to the same effect in reference to frequently losing sides of defendant's floats, without paying any attention to it; but knows nothing of this accident whatever.

F. M. Sheen is Vice-President of defendant Company; he testifies that the Company has only one two mule sugar float and only had one at the time of the accident, which

10.

flont was driven by a colored driver, who has testified in this case, by the name of Polite; he testifies how the wagons are loaded, and unloaded, and th t the sideboards, describing them, are frequently lost, and he has frequently seen sideboards of defendant, used by other transfer companies, but knows nothing of the accident in question save and except the letters offered in this record, between counsel for plaintiff and the defendant company.

He was asked the following question:

Q. In this interview with Mr. Aitkens--he is an acquaintance of yours?

A. Yes sir.

Q. You have known him for sometime?

A. Yes sir.

Q. Your relations are friendly with him?

A. Yes sir.

Q. When you talked to him about the accident, when he told you about the accident, did you not tell him that they could not prove anything?

A. No sir, I told him that I did not have any record of the accident.

Q. Did you not state to him that they could not prove anything?

A. No sir, I am positive that I did not.

Q. Did you not tell Mr. Aitkens that they did not have the number of your license?

A. No sir, I asked him if he knew the number of the license.

Q. He told you no.

A. Yes sir.

This virtually closes testimony of both plaintiff and defendant and the letters referred to in the testimony are made part of the record in this case.

These letters all and every one of them gave notice to the defendant company, of the time this accident occurred, the place where it occurred, the circumstances under which it occurred, the fact that the negro driver had charge of the wagon, and ran into plaintiff's automobile, and gave all the circumstances connected with the accident, together with the injuries to the car, and the child.

The answer simply acknowledged the receipt of the letter in question, and requested that the name of the driver, and the license number of the vehicle, which caused the injuries be furnished, and the answer to that letter states the inability to obtain the name of the driver and gives the reason why.

The reply simply advises that it is essential that the information asked for in the first letter be furnished; all subsequent letters are to the same effect and no information of any kind was furnished by the ~~plaintiff~~ defendant to ~~defendant~~ plaintiff, save and except that above referred to.

In the very able brief furnished by counsel for defendant, there are several important points which counsel states are essential in the determination of this case.

Amongst them is, first, whether or not the float which caused the accident, was operated by, or belonged to the defendant, and our answer to this question under the testimony, leaves no room for doubt, but that the float in question did belong to the defendant, was their property, was driven recklessly, carelessly, and negligently by the driver, a colored man, who when this accident occurred, drove his mules rapidly from the scene without paying the slightest attention even to the occupants of the car, notwithstanding he must have heard the screams of the child who was injured, the screams of the grandmother; he drove his team away from the place of the

accident, evidently knowing that he was the sole cause thereof and wanting to escape responsibility; doubtless thought this was the best method of his doing so.

The second question was whether or not the accident was caused by the negligence on the part of the driver of the float, and we answer this in the affirmative. He could easily have avoided this accident, from the testimony in this record and he failed to do so. The testimony of Mrs. Fitler, Mr. Aitkens and Mr. Martin leaves no room for doubt but what so far as plaintiff is concerned there was no negligence on the part of Mrs. Fitler, and convinces us that the driver of the float as has been stated was solely and wholly at fault.

The third question of complaint was whether or not if there was any negligence on the part of the driver of the float, plaintiff's wife was not also negligent in the handling of her car so as to constitute contributory negligence.

The answer to this is identical and in line with the comments made by us to question No. 2 and requires no further statement on our part.

The last and final complaint is whether or not ~~ixmagexxiizxxx~~ damages allowed are excessive.

In an examination of the authorities referred us by counsel for defendant, the case of Blume against the City, 104 La. 345, was a case where there was a suit against the City for ten thousand dollars, caused by an obstruction, in which plaintiff stumbled, fell and in the fall fractured and broke her right arm and the Court there held that notwithstanding the injuries received the sum awarded, $2500.00, was amply sufficient and gave judgment for that amount.

Another case. Daly vs. Kiel, 106 L*. 170, the amount of damages sued for was ten thousand dollars and the claim there was he suffered greatly and was crippled for life, and had lost his means of support, the Court awarded a judgment in the sum of Fifteen Hundred Dollars although the Court in its opinion said plaintiff might be limping or laming for the balance of his life.

In kkxxxxxxx the case of Collins against Lewis and Company,111 Ls. 741, plaintiff met with an accident and as a result of which he was unconscious for several days and had to wear a plaster cast upon his head and neck for four or five months longer, and suffers from permanent dislocation of the fifth cervical verterbrae and complete paralysis of one arm. The Court there rendered judgment in the sum of Fifteen Hundred Dollars.

And in Rossey vs. Lawrence & Hamilton, 123 L:. 1053, where the Court for the total loss of the thumb and foreginger and partial loss of two other fingers and which rendered a left hand almost useless for practical purposes, a boy of thirteen was allowed Twenty Five Hundred Dollars.

There are numerous cases cited in defendant's brief and others in our Supreme Court Reports which would simply multiply authorities on questions of damages, particularly the amount thereof, without in any way adding anything which would tender to throw further light on this subject. If, as has been stated by Courts of this and other States, we were simply to follow our sympathies instead of our judgment, we would be inclined to do that which we have no right to do.

A careful consideration of the questions involved, particularly in so far as the amount of damage is concerned leads us to the conclusion that in so far as the judgment

218

condemning  defendant to pay plaintiff for his own use, for injuries to his automobile, the sum of $349.00, same should be reduced by the sum of $35.00, leaving the amount of judgment, $324.00, to which plaintiff is entitled with legal interest from the date of judgment, and the judgment in favor of plaintiff, Ellis A. Fitler, in behalf of his minor child, Warreen Fitler, against the defendant should be reduced to the sum of Two Thousand Dollars, with legal interest from date of judgment, costs of appeal to be paid by plaintiff and costs of the lower Court to be paid by the defendant.

*Judgment amended and affirmed*